(No. 25296.—

JOHN W. CHERRY, Receiver, Appellee, *vs.* THE AETNA CASUALTY & SURETY COMPANY, Appellant.

*Opinion filed December 12, 1939—Rehearing denied Feb. 7, 1940.*

Gunn, J., took no part.

Acton, Acton & Baldwin, (William M. Acton, Edmund D. Adcock, and W. Braxton Dew, of counsel,) for appellant.

Hutton, Clark & Hutton, and Gunn, Penwell, Lindley & Burk, (H. Ernest Hutton, Horace E. Gunn, Harold F. Lindley, and Jackson R. Hutton, of counsel,) for appellee.

Mr. Chief Justice Wilson delivered the opinion of the court:

The Danville Hotel Company, a corporation, on November 11, 1925, entered into an agreement with Charles Benson, Inc., building contractor, for the construction of a nine-story hotel building in Danville, Illinois, (afterward known as the Wolford Hotel,) for the amount of $604,899 cash and $217,800 in common stock of the hotel company.

Certain of the funds for the construction of the building were provided or to be provided by the sale of stock of the corporation. The hotel company, on March 31, 1926, executed and delivered a trust deed to the hotel property to the Liberty Central Trust Company of St. Louis to secure bonds in the sum of $700,000. Caldwell & Company of Nashville, Tennessee, underwrote the bond issue. The bonds, after certain assurances were received by the underwriter as to additional financing, were sold to various persons, who were subsequently represented by a bondholders' committee.

Charles Benson, Inc., as principal, and the Aetna Casualty & Surety Company, as surety, on May 2, 1926, executed a bond in the penal sum of $822,699 to the hotel company, as obligee, providing for the faithful performance of the contract for the construction of the hotel building by the contractor, and indemnifying the owner against costs and damage suffered by reason of default. The bond provided that all persons who had contracts directly with the principal for labor or material should be paid. The underwriter made certain payments to the general contractor as the work on the building progressed. The total amount so paid was $442,821.75. The general contractor failed to pay some of the subcontractors, and the latter filed mechanics' liens against the hotel property. The hotel company did not fully pay the general contractor and it was adjudged a bankrupt in the United States district court on August 19, 1927. John W. Cherry was appointed receiver.

The receiver of the hotel company, on September 23, 1927, filed in the circuit court of Vermilion county an original declaration in debt against the surety on the contractor's bond, for the use of the subcontractors. The declaration was amended and another subcontractor's claim was added. The suit proceeded on the amended declaration, pleas filed thereto and a demurrer to the pleas. The demurrer was sustained. The defendant elected to stand

by its pleas. By agreement, however, the cause was submitted to the court for a hearing on the question of damages. The court entered judgment against the defendant for the amount of the penalty, $822,699, and damages for one subcontractor for $33,122.16 and for another subcontractor for $15,554.61. An appeal was prosecuted to the Appellate Court on the merits of the respective pleas. That court held the pleas were bad, and the judgment of the circuit court was affirmed. (*Cherry* v. *Benson,* 264 Ill. App. 199.) The claims in favor of the two subcontractors were settled and the judgments awarding them damages were satisfied. The hotel building was completed about May 1, 1927.

The plaintiff, on August 17, 1932, was given leave to file a third amended declaration. A demurrer thereto was sustained, and, on February 14, 1934, the plaintiff filed his fourth amended declaration. It contained seven counts or assignments of breach of the surety bond. Pleas, amended and additional pleas and demurrers were filed to the various assignments. Replications to various pleas, and demurrers to pleas and to replications were also filed. The issues presented by these pleadings will hereafter be considered. It is sufficient here to say that certain issues were decided in the circuit court and the cause was appealed to the Appellate Court, where the judgment of the circuit court was reversed and the cause remanded with directions. (*Cherry* v. *Aetna Casualty & Surety Co.* 285 Ill. App. 601.) Upon the remandment, further pleadings of the character of those mentioned, together with rejoinders and surrejoinders were filed. A decision was rendered in the circuit court consistent with the directions of the Appellate Court, but the cause was again taken to the Appellate Court and the judgment of the circuit court was then affirmed. (*Cherry* v. *Aetna Casualty & Surety Co.* 300 Ill. App. 392.) The cause is here on appeal from the judgment of the Appellate Court on a certificate of importance.

Previous to the time the decisions above mentioned were rendered the bankruptcy proceeding had been conducted to its termination in the United States district court, (*In re Danville Hotel Co.* 33 Fed. (2) 162,) and by appeal to the United States Circuit Court of Appeals. (*In re Danville Hotel Co.* 38 Fed. (2) 10.) The trustee in bankruptcy, during the pendency of the proceeding in the Federal court, had filed a petition in that court to marshal assets and sell the property free and clear of liens. The district court ordered that, as a condition precedent to bidding for the hotel property, the bondholders deposit $200,000, to provide for payment to the lien claimants. That amount was deposited in court. The property was sold by the trustee in bankruptcy on August 17, 1928. The bondholders' committee made the only bid and purchased the property for somewhat less than the amount of the bonds held by them. Personal property was also sold but it is not here essentially involved. From the amount deposited by the bondholders, subcontractors, who had not been paid, received the amounts due them.

Without setting forth the substance of the voluminous pleadings, reference, when necessary, will be made to them and the facts and circumstances in the record bearing upon the issues, when each specific contention is being considered. Among the contentions are the following: That the action presented in the fourth amended declaration was barred because not instituted within twelve months after the due date of final payment under the construction contract, as provided in the surety bond; that the plaintiff was not a third party beneficiary in the surety bond; that the plaintiff was not subrogated to the rights of lien claimants; that the plaintiff was barred by *res judicata,* estoppel and *laches;* that the provisions of the State and Federal constitutions were contravened by the rulings and findings of the circuit court and Appellate Court; that the damages assessed, and

the date from which interest should be allowed, were not properly determined.

It is contended by the defendant that the amended declaration filed on August 17, 1932, introduced a new cause of action not stated in the original declaration; that the final due date under the construction contract was June 1, 1927, and the plaintiff did not assert the claim of the bondholders until 1932. The action of debt by the receiver of the obligee in the bond was commenced on September 23, 1927, which was within one year of the date for final payment as provided in the construction contract. Proof was made of default and a judgment in debt was rendered for $822,699. All causes of action on the penal bond were merged into the penalty judgment, and assignments of breaches were not the commencement of a new action. Section 35 of the Practice act, in force when the suit was commenced, provided, in part: "In actions brought on penal bonds, conditioned for the performance of covenant, the plaintiff shall set out the conditions thereof, and may assign in his declaration as many breaches as he may think fit; and the jury, whether on trial of the issue or of inquiry, shall assess the damages for so many breaches as the plaintiff shall prove, and the judgment for the penalty shall stand as a security for such other breaches as may afterwards happen, and the plaintiff may, at any [time] afterwards, sue out a writ of inquiry to assess damages for the breach of any covenant or covenants contained in such bond, subsequent to the former trial or inquiry," etc. (Smith-Hurd Stat. 1933, chap. 110, par. 35, p. 2160.) It was not essential that subsequent assignments of breach of the bond, based upon liens or judgments on subcontractors' liens, should be sued on within a year from the due date of final payment under the construction contract. *Lesher* v. *United States Fidelity and Guaranty Co.* 239 Ill. 502; *McDole* v. *McDole,* 106 id. 452; *Dent* v. *Davison,* 52 id. 109.

It is contended that the surety bond was not intended for the benefit of the bondholders and that they have no right of action thereunder as direct beneficiaries, nor by subrogation to the rights of the subcontractors, but that the defendant is entitled to subrogation. There is both oral and documentary evidence that the underwriter of the bonds was insistent upon the execution of the surety bond, but, nevertheless, there is no language in the bond indicating that it was executed for the benefit of the bondholders. In the absence of an expressed intention to that effect the bondholders, as such, would not be within the protection of the bond. The mere fact that the bondholders desired such a bond would not legally incorporate the wish into the bond without language in the bond to disclose that as the intention of the principal and surety. (*Alexander Lumber Co.* v. *Aetna Accident and Liability Co.* 296 Ill. 500; *City of Sterling* v. *Wolf*, 163 id. 467.) The security of the bondholders on their bonds was the land and the hotel building. There is no statutory provision for their protection, similar to that for subcontractors.

The cases of *Carson Pirie Scott & Co.* v. *Parrett*, 346 Ill. 252, *Hartman* v. *Pistorius*, 248 id. 568, *Webster* v. *Fleming*, 178 id. 140, *Bay* v. *Williams*, 112 id. 91, *Dean* v. *Walker*, 107 id. 540, *Snell* v. *Ives*, 85 id. 279, *Bristow* v. *Lane*, 21 id. 194, and *In re Becken Co.* 75 Fed. (2) 681, and other cases cited by counsel for plaintiff, are not susceptible of the interpretation that a third person is a beneficiary directly interested in a surety bond which contains no language indicating an obligation in favor of such third person, even though the execution of the bond incidentally may afford protection to such third person.

Both parties claim the right of subrogation. First, we shall consider the claimed right of the defendant to subrogation. The latter part of the surety bond provided that if the principal default in the performance of the construction contract the surety should complete the building, and

"in case of such default the surety shall be subrogated and entitled to all rights of the principal arising out of or under" the contract. The surety was not required to complete the building because of the default of the contractor. The evidence discloses that before the execution of the surety bond certain of the subcontractors were required by the contractor to sign waivers of liens; that the explanation made by the contractor to the subcontractors for such requirement was that the surety company desired that each of the subcontractors execute bonds and all, or some of them, executed bonds to the contractor. The contract price of the subcontractors, for the labor or materials they were to furnish, in each instance was raised to an amount larger than the actual amount specified in the contract for labor or material, and the total of the liens approximated the difference between the amount of the subcontractors' contract with the contractor and the amount of the contract between the contractor and the hotel company; that is,—the so-called waivers of liens represented the contractor's profit, apportioned among the subcontractors, being the sum of $115,300. The waivers were delivered to the underwriter as the disburser of the bondholders' money. The plaintiff asserts that the requirement for a waiver of liens by subcontractors without the latter having received payment for their work and materials, and withholding knowledge of the true conditions from the plaintiff and bondholders, before the surety bond was executed, was a fraud upon the bondholders, and the contractor and surety are estopped to claim equities superior to those of the bondholders. The United States Circuit Court of Appeals, in the bankruptcy proceeding, had occasion to consider the question and held that when the contractor and the surety required the execution of lien waivers when the subcontractors received neither cash nor stock and the bondholders were permitted to believe the waivers were genuine, a fraud was committed against the latter. The evidence in this

record discloses the same condition as appeared in the bankruptcy proceeding and the same conclusion is justified here that was reached by the Federal court. The defendant is estopped to claim a superior right to that of the bondholders, if the bondholders have established a right of subrogation to actions which the subcontractors may have maintained. As a part of the obligation of the bond it was required that all persons who had contracts directly with the principal for labor and materials should be paid. The statute provides for the creation of liens of subcontractors and their enforcement. The surety bond recognized subcontractors as third parties and they were directly benefited by the bond. A surety bond that is conditioned on full performance of his contract by the principal will operate in favor of such third parties as the principal, by his contract with the promisee, undertakes to pay. The bond need be no more specific. (*Fogarty* v. *Davis,* 305 Mo. 288.) The rule is settled in this State that if a contract be entered into for a direct benefit of a third person, not a party thereto, such third person may sue for a breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit arising from the contract. If direct, he may sue on the contract; if incidental, he has no right of recovery thereon. (*Carson Pirie Scott & Co.* v. *Parrett, supra.*) The subcontractors had a right of action on the surety bond.

When the United States district court required the bondholders to provide for the payment of the liens in favor of the subcontractors before they could bid at the sale of the hotel property they did all that was required of them by the court. The requirement would not have been made of the bondholders if the surety company had already been subrogated to the rights of the lienholders. The bondholders, at that time, had a substantial interest in the hotel property. By the payment of the liens the bondholders were placed in the position of equitable assignees and pur-

chasers of the prior debt. They became creditors and succeeded to the rights of action the subcontractors had against the surety company. (*Thompson* v. *Davis,* 297 Ill. 11.) The bondholders acquired rights superior to those of the surety notwithstanding a provision in the surety bond providing for subrogation of the surety in the event of default by the contractor. (*In re Danville Hotel Co.* 38 Fed. (2) 10; *American Surety Co.* v. *Westinghouse Electric Manf. Co.* 75 id. 377.) The plaintiff acquired a right of subrogation. Subrogation is not simply a matter of contract but is one of equitable right. (*Aetna Life Ins. Co.* v. *Town of Middleport,* 124 U. S. 534.) One subrogated to the rights of another to sue on a written instrument may assert his right within five years after the date of such subrogation. (*Junker* v. *Rush,* 136 Ill. 179; *Walker* v. *Chicago, Madison and Northern Railroad Co.* 277 id. 451.) The bondholders paid the amount of the claims, proof was made of such amount and judgment was rendered therefor, which, with interest, was $121,980.78. Any judgment on the surety bond, with respect to the proper amount allowable to bondholders, could only be based upon their subrogated rights, and not upon any other incidental rights as bondholders. The question whether the proper amount of damages was allowed will be hereafter discussed in connection with the defendant's claim that the damages allowed were excessive.

It is contended that the Federal court, in the bankruptcy proceeding, had jurisdiction to determine any rights which the plaintiff might assert as a claim and that the questions now presented should have been decided in that proceeding; that the defense of *res judicata* extends not only to questions actually decided but to all grounds of recovery or defense which might have been presented, and that the defense of *res judicata* here interposed should be sustained. The present action is upon the surety bond, while the bankruptcy proceeding primarily related to the estate of the Dan-

ville Hotel Company. We have already referred to the finding in the Federal court that the surety company was estopped to claim prior equitable rights with respect to the subcontractors' liens. That court did not hold that the surety company was entitled to exoneration or to an assignment of claims of subcontractors without reimbursement to the bondholders who had deposited money for the payment of the liens mentioned. On this record we cannot hold that there was an obligation on the part of the plaintiff to present, in the bankruptcy proceeding, the question of its right to be subrogated to the claims of the subcontractors. The bondholders met the only requirement imposed upon them by the Federal court and deposited sufficient money to pay the amounts of liens to the subcontractors. What has been stated applies to the contention that the plaintiff is estopped to make the claim now asserted.

The defendant contends that its defense of *laches* should be sustained. That defense was first made in 1936, and since that time, as an inspection of the subsequent pleadings and record discloses, the plaintiff has not been guilty of a lack of diligence but the presentation of claim or claims was made within a reasonable period. There was no *laches*. *Lesher* v. *United States Fidelity and Guaranty Co. supra.*

Certain constitutional questions are presented to this court for the first time. By taking the case to the Appellate Court the defendant waived any constitutional questions. (*Simon* v. *Reilly,* 321 Ill. 431.) No constitutional question arose in the Appellate Court.

Counsel for the defendant contend that the amount of damages should be for $17,348.54, which they state was the net principal amount of loss of the bondholders on account of the liens mentioned. The defendant states that if the bondholders had not paid out the amount mentioned to protect the subcontractors they would have been required to pay the sum of $64,476.90, which was the amount of

cash the underwriter had on hand on the date of the filing of the bankruptcy proceeding, together with additional items which the underwriter had disbursed from bond proceeds and for which it claimed credit as against the hotel company. This argument appears to be based upon certain figures found in the record in the bankruptcy proceeding, but disclosed in the record, here, only in exhibits. The opinion in the bankruptcy proceeding by the Circuit Court of Appeals held that the bondholders had given full credit in respect to the bond proceeds above mentioned, and that the funds in the hands of the underwriter were properly applied for items other than repaying the bondholders' funds advanced and paid on the contractor's unpaid lien claims.

By cross-error the plaintiff claims the amount of damages and costs should have been $147,677.70. This latter amount was allowed by the trial court on the remandment of the cause by the Appellate Court on the first appeal, but the judgment was subsequently vacated and a final judgment for $121,980.78 was entered. We have herein held that any judgment on the surety bond, with respect to the proper amount allowable to the bondholders could be based only upon their subrogated rights. It was stipulated that the amount of interest at five per cent from the date of the completion of the contract to January 17, 1938, on the amounts due the respective claimants mentioned, was $43,430.16, and that the principal amount due the claimants mentioned was $81,825.44, making a total of $125,255.60. The judgment was entered for $121,980.78, because credit was given for interest the plaintiff had received from other sources equal to the difference between the amount of the judgment and the total of principal and interest due the claimants as stated in the stipulation. The plaintiff, for the use of the bondholders, is entitled to whatever interest the subcontractors could have recovered; that is,— the amount due from the date the claim is due under the

construction contract. (Ill. Rev. Stat. 1939, chap. 82, sec. 1, pp. 1976-7; *Smith* v. *Gray*, 316 Ill. 488.) We will not disturb the finding.

While we here hold that the plaintiff, for the use of the bondholders, did not have a direct interest permitting him to sue upon the surety bond for the benefit of the bondholders, as such, there was a right of action in favor of the plaintiff as a subrogee, and the amount of damages was assessed upon that basis. We find no prejudicial error in the record.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN took no part in this decision.