Merrill M. Dunning, Respondent-Appellant, v. Marvine K. Dunning, Petitioner-Appellee.

Gen. No. 11,030.

Second District, First Division.

August 28, 1957.

Released for publication September 16, 1957.

Peterson & Goldsmith, of Aurora (David D. Dyer, Jr. of Aurora, of counsel) for appellant.

Simpson & Simpson, of Aurora (May R. Simpson, and John P. Simpson, of Aurora, of counsel) for appellee.

JUSTICE SPIVEY delivered the opinion of the court.

On September 24, 1950, the parties to this appeal were married at Aurora, Illinois, and thereafter, until June 1955, lived together as husband and wife. Two children were born of the marriage, Sherrill Elaine, now age five, and Robert Lee, now age two years and three months. In the action for divorce commenced by the plaintiff, the husband, on September 8, 1955, it was alleged that the wife was guilty of extreme and repeated cruelty.

A decree of divorce, granting the permanent care, custody, and control of the children, subject to rea-

sonable visitation privileges of the defendant, was awarded the plaintiff on December 3, 1955.

Thereafter, on July 2, 1956, the defendant filed her verified petition to modify the decree of divorce asking that the custody of the children be awarded to her. No answer to the petition was filed.

Testifying in her own behalf defendant stated that at the time of the divorce proceedings she was not represented by counsel; that her husband's attorney prepared an answer in her behalf which she signed, believing that it was a legal thing that had to be done; that by agreement during the months of June through September, 1955, the children remained with the father in his apartment which was above her parents' apartment; that during that period her sister cared for the children; that she was there at least once a week on her day off, cleaned the house, took care of the children, cooked the dinner, and took them out; that during this same period her husband told her that she could have the children when she obtained a proper place for them; that she had no trouble about visitation until he remarried in February; and that thereafter she was permitted visitation only once a month, except on one occasion, and then only at times suitable to his present wife. Petitioner further testified that on an occasion in May, she discovered Sherrill Elaine had an infected ear and administered to it; that two weeks later when she next saw Sherrill, her ear was running and had been for two weeks; that she took her to a doctor for treatment and later for a check up; and that she took her to a dentist twice and to have cavities filled; that she had subsequent appointments with the dentist for her but that her husband on one occasion and his present wife on another refused her the right to take her to the dentist. Her evidence further disclosed that she had remarried in March of 1956, and that she had a suitable home for the children;

244

and that on many occasions she was denied the right to see her children.

Merrill Dunning in his own behalf denied that he had promised the defendant that she could have the children when she obtained suitable quarters; and stated that Sherrill had been under the doctor's care for measles and the earache. He further testified that his present wife has two children by a former marriage aged five and eight years that are living with them at this time.

The court sustained objections to testimony offered to show the mother's conduct and condition of health prior to the divorce herein.

At the conclusion of the hearing, the chancellor awarded the custody of the children to the defendant. The order found among other things that the mother was a fit person with sufficient facilities for the proper care of the children; that the welfare and best interests of the children would be furthered by permitting them to be raised in their mother's home; and that the decree awarding the care and custody to the father should be modified because of the changed circumstances of the parties.

On appeal, the plaintiff contends that the decree in awarding custody of the children to him is res adjudicata; that the evidence does not support the trial court's finding that there has been a change of circumstances subsequent to the rendition of the decree which affects the welfare and best interests of the children; that a change in circumstances in the condition of the party deprived the custody in itself will not sustain an alteration in custody; and that the court erred in excluding evidence of the mother's misconduct and health prior to the divorce.

The plaintiff in support of his principle contention cites Wade v. Wade, 345 Ill. App. 170; Maupin v. Mau-

pin, 339 Ill. App. 484; and Thomas v. Thomas, 233 Ill. App. 488.

In the Wade case, this court reviewed the other cases urged by the plaintiff, and we quote therefrom,

 "A decree fixing the custody of children is final and res adjudicata and should not be altered or amended unless new facts have arisen since the entry of the decree that make it necessary for the welfare of the child that the custody be changed. (Thomas v. Thomas, 233 Ill. App. 488; Maupin v. Maupin, 339 Ill. App. 484; Liles v. Liles, 336 Ill. App. 159.) The welfare of the child is pre-eminently the thing to be considered. (Martinec v. Sharapata, supra.)"

In quoting Maupin v. Maupin in the Wade case, the court in the Maupin case quoted Thomas v. Thomas, which said;

" 'A decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards, unless on altered conditions since the decree, or on material facts existing at the time of the decree, but unknown by the court, and then only for the welfare of the child.' "

In the Wade case, the court further quoting the Maupin case said:

 "We call particular attention to the last phrase in the above-stated rule. It should be plain, in any case, that the mere fact that there has been a change in conditions is not sufficient in itself to modify a decree unless those changed conditions affect the welfare of the child. As stated in another chancery court: 'But the changing circumstances must be, obviously, those that affect the children,—not those that concern the parents.' Dixon v. Dixon, 76 N. J. Eq. 364, 367, 74 Atl. 995. Another court has said: 'In determining whether there have been changed conditions the court must keep in view primarily the welfare of the child. The custody of the child is not awarded for the purpose of

246

gratifying the feelings of either parent.' Hamilton v. Anderson, 176 Ark. 76, 2 S. W. (2d) 673."

"The court again says on page 492 of the above opinion: 'It is the policy of courts of review to recognize a broad discretion in a chancellor called upon to award custody of children, and perhaps even greater discretion is allowed in altering visitation privileges. But this policy cannot properly admit that a definite award of custody has no permanence or finality whatever. Changes in permanent custody (as distinguished from visitation privileges) should not be subject either to constant or spasmodic variation, merely to follow fluctuations in the health, employment, or residence of the party last deprived of custody, where the order was not conditional with respect to such changes.

'(9) Accordingly, we hold that, if a divorce decree award custody unconditionally, a mere showing of change in conditions of the person deprived of custody is not sufficient to set aside or drastically modify such decree, in the absence of proof that the welfare of the children requires such change.

'(10) We find nothing in the record now before us indicating that the welfare of the children required any change in the custody decree. The chancellor did not make any finding to that effect, . . .'"

We have quoted at length from the Wade opinion believing the language therein properly states the general principles applicable to all questions of changes in the custody of children.

In the Wade case the facts disclose that the parties were divorced at a time when they probably both wished to remarry. The parties agreed that Mrs. Wade would have custody of her son and that the custody of the daughter would be in Mr. Wade. The decree so provided. No contention was made that the daughter Sharon, who was at the time of the petition to modify in the physical custody of relatives in Iowa,

247

had not received excellent care both with the father and the relatives. Mrs. Wade had seen Sharon only twice in about six years and during that time made no further inquiry about her welfare.

In affirming the chancellor in finding that the custody should remain in the father, the court observed that at the time of the divorce Mrs. Wade fully understood and agreed that the custody of Sharon would be awarded to the father; that the mother during a period of about six years from the time her daughter was six months old had shown no interest whatever in her child; and that "The child is now more than seven years old and her mother is a complete stranger to her"; and that the child was now in a fine home.

The court further observed that the chancellor had an opportunity to see the parties on the witness stand and that courts of review should not reverse his findings unless they are clearly against the manifest weight of the evidence.

The court in concluding said:

"After a careful analysis of all the testimony in the record and after these many years, we do not believe that the welfare of the child requires a change in custody."

In Maupin v. Maupin the lone contention of the petitioner, by her petition filed four months after the decree, was that she was in poor health at the time of the divorce and that she had now regained her health and had established a suitable home for the child. The chancellor made no findings to the effect that the welfare of the children required a change of custody and the court in reversing the chancellor found that the record did not support an order changing custody.

In Thomas v. Thomas the court in reversing the trial court in changing the custody from the mother to the father found that there was no showing or finding that conditions had changed since the entry of the decree.

In the instant case, however, there has been more than just a change in the condition of the person deprived of custody.

It would serve no useful purpose for us to again recite the facts in this case and compare them to the facts in the cases relied upon by the plaintiff for the distinctions are apparent.

■ It has been the long established policy of the courts of this state that it is generally to the best interests of children of tender years to entrust the care and custody to the mother if she is fit and proper person. Nye v. Nye, 411 Ill. 408.

In all of the duties of a trial judge there is no graver responsibility placed upon him than that of deciding the custody of children in the cases of separated parents. He must call upon all of his background and wisdom not only as a judge but that of his lay experiences. He has an opportunity to observe the appearance of the witness, their candor and their demeanor which together with their testimony throws light upon the welfare of the children.

As stated in Bachrach v. Burkhardt, 344 Ill. App. 80,

"In cases of this kind, before this court would be justified in reversing the order granting the custody to the father, the evidence must be clear and convincing that the trial court had erred in his judgment. The same judge tried all of these cases involving the same thing; namely, the custody of this little girl, Lorein Burkhardt. He was in a much better position than a court of review to decide what was the best interest of the child, which one of the parents should be given her custody. After all, it is the welfare of the child that must govern which one of them should have her."

■ In the instant case the same judge heard the divorce and this petition for change of custody. He found that there had been a change of circumstances affecting the welfare of the children since the decree

was entered and the change of custody was to the *welfare and best interests of the two children.*

We are not disposed to say in this case that the findings and order of the court altering the custody were against the manifest weight of the evidence.

■ Complaint is made of the chancellor's refusal to consider certain evidence of alleged misconduct of the mother said to have occurred prior to the decree of divorce herein. It was not shown that the evidence offered had any bearing on the mother's conditions or fitness as of the time of the hearing. No such charges were made in the complaint for divorce and the mother was awarded reasonable rights of visitation. The mother's fitness would seem to have been determined as of that time and the chancellor properly excluded evidence of conditions prior to the decree. Nye v. Nye, 411 Ill. 408.

The order of the trial court is affirmed.

DOVE, P. J. and McNEAL, J., concur.