Augusta C. Arden, Plaintiff-Appellant, v.
Samuel J. Arden, Defendant-Appellee.

**Gen. No. 10,274.**

Third District.

April 5, 1960.

Released for publication April 21, 1960.

Woolen, Byers, and Brown, of Decatur (Frank H. Byers, Rex L. Brown, and Elmer C. Hawkins, of counsel) for plaintiff-appellant.

Henson, Morthland, and Henson, of Decatur, for defendant-appellee.

PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

This is an appeal from an order modifying a decree for the custody of the minor child of the parties, Shelley-Lynn Arden. On March 4, 1959, in the Circuit Court of Macon County, Illinois, Augusta C. Arden, plaintiff, was granted a divorce from Samuel J. Arden, defendant, on the ground of cruelty. By the terms of the divorce decree custody of the minor child of the parties was awarded to the mother with right of designated visitation on the part of the father. There were no other conditions as to custody. The father was ordered to pay for the support of the child. By the findings of the court in the divorce decree, the plaintiff was found to be a faithful and true wife, and a

proper person to have the care, custody and control of the minor child, Shelley-Lynn Arden, who was approximately eight years of age at the time of the decree. On June 10th, 1959, defendant filed his petition to modify the decree, alleging a change of circumstances warranted a change of custody from the plaintiff to the defendant and abatement of the support payments. To this petition the plaintiff filed her cross-petition to modify the original decree asking that the payments for the support of the child be increased, due to the increased income of the defendant.

Hearing was had before the chancellor and it was ordered that the defendant's petition for modification of the decree be granted, the cross-petition of the plaintiff be denied, and the custody of the minor child awarded to the defendant. From that order the plaintiff appeals to this court.

Plaintiff assigns as error that the trial court used the transcript of the divorce proceedings as a basis for its ruling on the petitions for modification, failed to treat the findings of fact in the divorce decree as *res adjudicata*, the decision was against the weight of the evidence, and the decision failed to make the welfare and best interest of the child the paramount consideration in determining custody.

This court is inclined to agree with the contention that the trial court used the transcript of the divorce proceedings as a basis for its ruling on the petitions for modification of the decree and failed to treat the findings in the decree as *res adjudicata*. The remark of the trial court that by the authority of Handrich v. Handrich, 339 Ill. App. 151, the court is not limited to the pleading in the proceedings, but that "the gate is open" and that the court might inquire into any matter is not justified by the decision in the Handrich case. In that case, the court said, page 155: "While the scope of the present inquiry was not limited by law

184

to any particular period of time, yet the court cannot sit in review on the former decision, and the chancellor properly declined to do so." The trial court also said: "This was a continuing thing and all I have to do is look back at the record in this case. I think maybe this very same man had a lot to do with the divorce. It didn't start yesterday and didn't start June 5." This is a very frank admission by the court that he was using the transcript of the divorce proceeding as a basis for his ruling. Again, after the testimony of the defendant, the court reminded the attorney for the plaintiff that he had read the certificate of evidence and that Mr. Arden didn't testify as to his earnings in the divorce proceeding. Again, in the examination of the plaintiff, neither the counsel for the plaintiff or defendant raised the religious issue, but it was raised by the court, and after some discussion between the witness and the court as to the marriage and the legitimacy of the child, the court said: "All this appears in the prior ruling that was made in this case. These matters are not matters I have pulled out of the air. They are matters of record in this case."

■■■■ So that it appears from the remarks of the trial court, whether it was done consciously or unconsciously, the trial court was basing his ruling upon the prior record of the divorce. And while the court, in a petition to modify a decree as to custody of a minor child, is not limited in the scope of its inquiry, it may not overrule the findings in the original decree and may not use the transcript of the evidence in the divorce proceeding as a basis for a ruling in the modification question. Handrich v. Handrich, 339 Ill. App. 151; Dunning v. Dunning, 14 Ill.App.2d 242; Nye v. Nye, 411 Ill. 408. As said in the Nye case "In proceedings involving child custody the order of the court or judge having competent jurisdiction is a final order, and is binding upon the parties under the same facts and so

long as the same conditions exist as did at the time of the hearing and order." In this case, at the divorce hearing, the court held that the plaintiff was a proper person to have the custody of the child, holding so in this language: "Plaintiff is fit and proper person to have care, custody, control and support of minor." The court in a hearing for modification, cannot review this finding of fitness in the divorce decree unless conditions have arisen to warrant the change of custody. The court cannot use the evidence adduced in the divorce proceeding to justify or base a decision changing the custody of the child. The decree as to fitness of the plaintiff was *res adjudicata* as to the facts that existed at the time the decree was entered. People ex rel. Stockham v. Schaedel, 340 Ill. 560; Nye v. Nye, 411 Ill. 408. It should not be altered or amended unless new facts have arisen since the entry of the decree that make it necessary for the welfare of the child that the custody be changed. Thomas v. Thomas, 233 Ill. App. 488; Maupin v. Maupin, 339 Ill. App. 484; Liles v. Liles, 336 Ill. App. 159; Wade v. Wade, 345 Ill. App. 170. In all matters concerning the custody of the child, the paramount issue and the guiding star for the court is the welfare of the child. The fact of changed conditions, is not sufficient. Before a court has the authority to modify a decree as to custody, those changed conditions must be such that affect the welfare of the child. Wade v. Wade, 345 Ill. App. 170. In that case, the court in quoting an authority from another jurisdiction, said: "In determining whether there have been changed conditions the court must keep in view primarily the welfare of the child. The custody of the child is not awarded for the purpose of gratifying the feelings of either parent or with any idea of punishing or rewarding either parent."

█ Since our law denies the trial court the right to change custody by a review of evidence before or

available to the court at the time of the divorce decree and any change must be based upon changed conditions, an examination of the testimony as to changed conditions is necessary. While the court in its opinion stated that the question that concerned the court more than any other, "was the neglect of the child, the fact that the girl must be an urchin that travels about the streets," we find nothing in the record to substantiate this statement of the court. It is true that there was some testimony that the child had been allowed to go with other children some eight or ten blocks to an amusement park where there were devices for children to play, but this fact alone is insufficient to show neglect or that the child is an "urchin that travels about the streets." The testimony shows that the schooling and religious education of the child was kept up by the mother. No fault was found or disclosed as to the neighborhood or the condition of the home. So the changed conditions upon which the court must have relied are confined to the alleged misconduct of the plaintiff with William Snyder. There is no evidence that the mother was not kind, affectionate and proper in her care of the child.

This alleged misconduct is very much in dispute. The defendant relies upon the testimony of a private detective hired to secure evidence of misconduct on the part of his former wife, and the testimony of a ten year old child, a friend of Shelley-Lynn. This testimony of misconduct is denied by the plaintiff, by William Snyder, by the baby-sitter who stayed at the home certain nights of the week when the plaintiff worked late, and the testimony of the ten year old witness for the defendant as to misconduct is denied and refuted by Shelley-Lynn. The proof as to the adultery of the plaintiff is far from conclusive. Of course, as was pointed out in the case of Marcy v. Marcy, 400 Ill. 152, the direct fact of adultery can

seldom, or ever, be proved. Usually, the court is justified in finding that adultery has been committed, when the facts and circumstances introduced in evidence fairly and reasonably lead to that conclusion. Yet, assuming that the chancellor in this case was justified in finding that the plaintiff was guilty of adultery with William Snyder, on the occasion testified to by the ten year old girl, does that represent such a change of circumstances that affects the welfare of the child Shelley-Lynn, to the extent of taking the custody of the child away from her and awarding the custody of the child to the father, who admittedly will be away all day and the care, control and raising of the child will be entrusted to the defendant's nephew and his wife? It is not contended or proved that the plaintiff was not a kind, affectionate mother. Neither was it proved that she had neglected this child in any way. Even if she was guilty of immoral acts, our courts have held in many instances that this in itself is not sufficient to take the custody of children from the mothers, unless such immoral acts affect the welfare of the child. This court in the case of Brown v. Brown, 13 Ill.App.2d 56, held that where a divorced mother of young children was furnishing a comfortable and adequate home, was properly feeding and clothing them, and was not neglecting their religious and educational needs, and no evidence indicated probable future misconduct, she was improperly held as a matter of law to be unfit to have custody. The case of Nye v. Nye, 411 Ill. 408, is somewhat analogous as to facts. There the mother was charged with adultery. And the court in that case, at page 412, commenting on the decision of the Appellate Court which was affirmed, said: "There was no condition attached to plaintiff's custody rights, and no condition was broken by the alleged misconduct of plaintiff. There is no showing of unfitness on the ground of plaintiff's lack of care of Penny since the decree. The

plaintiff's misconduct with Bruckner does not disqualify her as custodian of the child, nor is there any justifiable inference of promiscuity on her part. There is no evidence the child ever witnessed any misconduct on the plaintiff's part. Assuming the chancellor decided the factual issues correctly, the court found the judgment of unfitness to be wrong as a matter of law. Finding no unfitness nor change of circumstances, the Appellate Court held that the modification of the decree giving sole custody to the defendant was an abuse of discretion. Accordingly, the Appellate Court reversed the modification decree and remanded the case for further proceedings not inconsistent with its opinion."

█ In the Nye case the plaintiff and Bruckner married shortly after the alleged commission of improper conduct on the part of the plaintiff. In this case, although counsel has made a statement that the plaintiff and Snyder are now married, this court has no record of such marriage and cannot take judicial notice of a marriage.

██ This court is in accord with the reasoning of the Nye case where that court on page 414 said: "It is usual in such cases, due to the tender years of the child and in consideration of its best interests, to entrust its care and custody to the mother, she being a fit and proper person to rear the child. (Miner v. Miner, 11 Ill. 43; Draper v. Draper, 68 Ill. 17.) The maternal affection is more active and better adapted to the care of the child. Especially is this true in the case of a minor daughter, where the care and guidance of a mother's hand is doubly important. This principle has become so well fixed and followed in this State that this court has not in recent years been called to rule upon it. Therefore, compelling evidence must be presented, proving the mother to be an unfit person, to cause the custody of her minor daughter to be denied

189

her, or there must be a positive showing that to deny custody to the mother would be for the best interests of the child." And the court in that case, continuing on page 415, said: "Where the mother is able to care for her minor daughter and is not shown to lack the proper attributes of good motherhood, past misconduct, where the evidence indicates no probable future misconduct, should not be a basis for denying custody to the mother. To do so would be not only to punish the mother for her past misconduct, but, more important, would punish the child by denying her a mother's care and guidance. It is not the purpose of this court, nor of any court, to so punish an innocent child. The guiding star is and must be, at all times, the best interest of the child."

 This principle is stated in Dunning v. Dunning, 14 Ill.App.2d 242, where the court said: "The welfare of the child is pre-eminently the thing to be considered." And in that case, the court quoting from the case of Wade v. Wade, 345 Ill. App. 170, reiterated the principle that any change of conditions must be such changed conditions that affect the welfare of the child. And since the decree of divorce is *res adjudicata* as to the fitness of the plaintiff at the time of the decree, there must be convincing proof that the fitness of the plaintiff to have the custody of the child has so materially changed, as to affect the welfare of the child. We do not find such proof in the record. This court recognizes the well grounded principle of law that as to questions of fact, the decisions of the chancellor should not be overruled by a reviewing court, unless clearly and palpably erroneous, or where the decision is against the manifest weight of the evidence. Handrich v. Handrich, 339 Ill. App. 151; Wade v. Wade, 345 Ill. App. 170; Dunning v. Dunning, 14 Ill.App.2d 242. But in this case, assuming the decision of the trial court was correct on the factual question of misconduct, yet

as a matter of law, there was not such evidence of changed conditions on the part of the plaintiff that affected the welfare of the child, to justify the change of custody. There is nothing in the record to justify the finding that the child was an urchin that traveled about the street. There is nothing in the record to justify the injection of a religious issue in the cause. There is nothing in the record to show that this plaintiff was not furnishing the child with a comfortable and adequate home, was not properly feeding and clothing her, or was neglecting her religious and educational needs.

■ In this case, as in the Nye case, assuming the chancellor decided the factual issues correctly, we believe the judgment of the chancellor as to the unfitness of the plaintiff, to be wrong as a matter of law.

■ Bias on the part of the trial judge is claimed by the plaintiff. With this contention, this court does not agree. A review of the evidence, the rulings of the court on objections, the reasons assigned by the court in its decision, all indicate that the court was striving diligently and conscientiously to reach a decision that would be for the best interests of the child. Unquestionably, the court took notice of matters that were *res adjudicata,* by taking notice or using the transcript of the divorce proceedings. This was error. And probably, using the matters in the transcript of the divorce proceeding as a springboard for its decision, the trial court reached the decision to change the custody. This was not justified or proper, as a matter of law, based upon the failure to prove any change in circumstances or conditions that would affect the welfare of the child. The custody should have been left with the mother.

Reversed.

CARROLL and ROETH, JJ., concur.