Francis Marie Taylor, Plaintiff-Appellee, v. Harold Marshall Taylor, Defendant-Appellant.

Gen. No. 48,280.

First District, Second Division.
June 30, 1961.
Rehearing denied July 25, 1961.

Davis, Boyden, Jones & Baer, of Chicago (Joseph W. Baer and John E. Angle, of counsel), for appellant.

Rinella and Rinella, of Chicago (Charles J. Little and John P. Rinella, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from an order modifying a divorce decree. The decree for divorce was entered on January 21, 1957. That decree adopted verbatim the entire agreement of the parties, wherein the parties declared that they considered it to their best interests to settle between themselves their respective rights and obligations. Each party had the advice, investigation and recommendations with reference to the subject matter of the agreement.

The dispute arises over the provision giving the plaintiff the right "to determine the religion in which each child shall be raised" and the defendant the right "to determine the education which each child is to have and the schools which each child shall attend."

Mr. Taylor, the defendant, is a Protestant; Mrs. Taylor, the plaintiff, is a Catholic. The parties have two children; Jacqueline, ten years old at the time of the divorce decree and Hunt Marshall, who was then eight.

Hunt Taylor, the younger child, has been attending Chicago Latin, a private, nondenominational institu-

46

tion and is not involved in these proceedings. Jacqueline the daughter, was attending a grade school maintained by the parish of Our Lady of Mount Carmel. In the spring of 1958, the defendant made arrangements to have Jacqueline attend the Ferry Hall School for Girls, a boarding school in Lake Forest, Illinois. Jacqueline visited the school at that time and returned in the fall of 1958 to take her entrance examinations and other tests. Upon receiving notice that his daughter passed these entrance examinations, the defendant made a financial commitment in excess of $2,000 to cover the expenses involved in matriculating her at Ferry Hall.

Plaintiff objected to the defendant's choice of school on the ground that Ferry Hall was not a Catholic institution and thereafter, in the fall of 1959, contrary to the terms of the divorce decree, enrolled Jacqueline at Immaculata, a Catholic day school. The defendant sought relief from the court to enforce his rights as to the selection of the proper school for his daughter.

The proceedings were held and upon the conclusion of the testimony, the Chancellor ordered that the petitioner's right to determine the education of his children, which had been incorporated in the divorce decree, be stricken; he further ordered the defendant to pay for the cost of the Catholic education and to pay the plaintiff's attorney $350 for their expenses in changing the original decree.

The Chancellor was evidently motivated by the lack of judgment in dividing the responsibility for religion and education between the parties. In his words: "It is my considered opinion that this decree is going to cause trouble of all kinds. I am going to modify it. It is my opinion, gentlemen, that the line between education and religion is so thin, it is so easy to step over this line either way . . .".

The Chancellor did not base his opinion on any change in the circumstances since the entry of the decree, although he did recognize that the conflict between the parents over the question of the child's schooling was affecting the child academically since her enrollment at Immaculata. He did not regard the decree as being inherently defective.

It is well settled in Illinois that a decree for divorce cannot be modified or amended unless there has been a material change of circumstances since the entry thereof. Dunning v. Dunning, 14 Ill App2d 242, 144 NE2d 535; Wade v. Wade, 345 Ill App 170, 102 NE2d 356; Wick v. Wick, 341 Ill App 478, 94 NE2d 602; Maupin v. Maupin, 339 Ill App 484, 90 NE2d 234; Thomas v. Thomas, 233 Ill App 488. To paraphrase Wade v. Wade, supra, a decree fixing the education of children is final and res judicata and should not be altered or amended unless new facts have arisen since the entry of the decree which make it necessary for the welfare of the child to be changed. "The changing circumstances must be, obviously, those that affect the children,—not those that concern the parents." Dunning v. Dunning, 14 Ill App2d 242, 246, 144 NE2d 535.

Nothing has occurred in the instant case which would warrant the court in modifying the divorce decree. There were no changes of circumstances, other than those which resulted from the plaintiff's violation of the decree. The plaintiff cannot treat this violation, the enrollment of the daughter in a Catholic School, as a fait accompli, and use that as a basis for her contention that it would be in the best interest of the child to remain in the Catholic School.

Neither can the plaintiff argue that the defendant's right "to determine the education which each child is to have and the schools which each child shall attend" is impliedly limited to a Catholic School.

48

Had that been the intention, it would certainly have been stated in unmistakable language. The instrument shows the signs of careful draftsmanship and due deliberation over the parties' respective rights. It should therefore not be set aside so easily, particularly where there has been no change of circumstances. That is the law and that should be controlling for us.

The defendant was not limited to selecting a day school for the children. Paragraph 3(f) of the agreement, incorporated in the decree, provides that when and if Mr. Taylor decided to send either or both children to boarding school, he shall pay the expenses incident to the education of each such child, but that the children shall not be sent to boarding school until he or she is at least of high school age.

There is absolutely nothing in this record to indicate that Mr. Taylor has any intention of encroaching on the plaintiff's prerogative to determine the religion in which Jacqueline shall be raised. It does appear that his only motivation is to improve his daughter's academic standing. The defendant has a genuine concern about his daughter's chances of gaining admission to a college of high scholastic standing and in the light of her present scholastic standing, this apprehension is indeed well-founded. Jacqueline's grades at Immaculata were below average (C-minus), even though she was not taking a full load. Yet the results of her aptitude examination and other tests indicated that she had the necessary ability to gain admission at Ferry Hall. Certainly one clear inference from this is that the plaintiff's reluctance to abide by her agreement has had a harmful effect on her daughter's well-being.

Plaintiff now seeks to inject a religious issue in this controversy. She says that it would be "against her religion" to permit Jacqueline to attend Ferry Hall because it is a non-Catholic school. This argument, of

49

course, is not based on any constitutional grounds. Indeed, the plaintiff herself has pointed out that the question of religious freedom is not before this court. Levy v. Broadway-Carmen Building Corp., 366 Ill 279, 8 NE2d 671; Cherry v. Aetna Casualty and Surety Co., 372 Ill 534, 25 NE2d 11; Simon v. Reilly, 321 Ill 431, 151 NE 884. Apparently, her point is that the Chancellor has some sort of general power to consider the religious impact of a decree upon a child of divorced parties. However, the two cases cited, Frank v. Frank, 26 Ill App2d 16, 167 NE2d 577, and Smith v. Smith, 340 Ill App 636, 92 NE2d 358 (Abst. #45,024) are not in point and have no bearing on the issue under consideration.

Recently, we were faced with the task of implementing a provision in a divorce decree regarding the religious training of a child, and held that under the particular circumstances of that case, the court's action in modifying the decree was erroneous. Gottlieb v. Gottlieb, # 48242, filed April 18, 1961. We there said that "we do not hold that agreements of parties with respect to the religious training of children should be enforced in all situations, but in the absence of clearly established circumstances indicating that the best interests of the child would be served by modification we do not feel that solemn agreements incorporated in a decree and sanctioned by the court should be so lightly cast aside . . .". Ibid., p 19.

It is important to stress the fact that the defendant does not object to the provision in the decree granting the plaintiff the right to determine the religion of the children. Although Mr. Taylor is a Protestant, he is willing to have the children raised as Roman Catholics. His choice of Ferry Hall was in no way designed to obstruct this understanding.

50

Ferry Hall School for Girls enjoys a very high academic standing as a college preparatory school. It is non-denominational and non-sectarian. There is no religious proselyting. There are numerous students and faculty members of the plaintiff's religious persuasion presently attending and teaching there. Each student is encouraged to practice her own faith and is required to attend her own church on Sundays. A local parish priest attends to the spiritual needs of the Catholic students and visits the school at least once a week to give instructions in that faith.

The plaintiff objects to the fact that Ferry Hall has morning services and a Sunday vesper service, however, these services are non-denominational, and at any rate, it is understood that Jacqueline would be excused from attendance.

The plaintiff finally adopts the argument that even if the most scrupulously neutral attitude were observed at Ferry Hall, it would still not satisfy the dictates of her religious convictions which, she says, require that the child be enrolled in a Catholic school. It thus appears from the pleadings and the testimony that the plaintiff's interpretation of the religious provision in the decree is considerably broader and more subtle than one might at first suppose. Plaintiff in effect is asking the court to hold that Jacqueline must be permitted to receive her secular education under Catholic auspices so that her religious education will be implemented at the secular level. This position assumes that the provision relating to the child's religion is somehow more inclusive than the educational provisions and is inherently incompatible with them. On the other hand, the defendant suggests that if the religious provision is capable of such a vague and indefinite construction, then it should not be enforced and it should be stricken. Defendant points out that this is

51

what is done in other jurisdictions where the courts were confronted with the dilemma of enforcing matters of a religious nature. Hackett v. Hackett, (Ohio, 1958), 150 NE2d 431; Lynch v. Uhlenhopp, (Iowa, 1956), 78 NW2d 491.

This would undoubtedly be the result if we were to adopt the plaintiff's rather strained interpretation of the religious provision clause in the decree; however, as we have indicated, there is no religious issue in this case. The implication of the plaintiff's argument that secular education cannot be isolated from religious teaching is contrary to the basic tenets of our public school system and it is a well-known fact that millions of American Catholics send their children to public schools without any apparent violation of their religious precepts.

The real question here is whether both of the provisions of the decree should be enforced. In the absence of changed circumstances, both provisions in the decree should be enforced and, given good will on the part of the plaintiff, they can be. Surely it is to Jacqueline's best interest that she be enrolled in a boarding school with an excellent academic rating, where she can be given individual attention, rather than continue in her present surroundings in a large day school. With many of the students and several of the faculty at Ferry Hall practising the Catholic religion, provisions for weekly religious instructions of the Catholic students by a Catholic priest, and the requirement that each student attend her own church every Sunday, Jacqueline will be given a helpful environment in which to practise the religion which the plaintiff has chosen for her.

Accordingly, we hold that the Chancellor erred in divesting the defendant-petitioner of his right to select his daughter's school and education and that order is reversed and the cause is remanded with directions to

reinstate the provisions of the divorce decree relative to the education of the children.

Judgment reversed and cause is remanded with directions.

FRIEND, P. J. concurs.

BURKE, J. dissenting:

Jacqueline, now 15 years of age, is finishing her sophomore year at Immaculata High School in Chicago. She lives with her mother and brother in their home nearby. Immaculata is an excellent school. Many of her schoolmates in grammar school are with her in high school. She is an average student. She likes Immaculata and wishes to continue her studies there. Ferry Hall is also an excellent high school. Jacqueline visited that school. Nevertheless she desires to remain a student at Immaculata High School. Her feelings should be considered.

The agreement between the parents should not be the sole criterion in determining the welfare of their daughter. She should be consulted. She is not a chattel to be shunted around. She has rights independent of the parents. We should be reluctant to interfere with the decision of the chancellor. He saw the parties. He talked to Jacqueline. She has a home and is now in a good school with friends. The majority opinion would wrench her from this environment and send her among strangers away from home.

The cases cited in the majority opinion involve a change of custody. The instant case concerns the selection of a school. In the Wade case the court in deciding that the custody of Sharon Wade should remain with her father, said (179): "The welfare of the child is pre-eminently the thing to be considered." It is interesting to note that in the Dunning case the

court affirmed the order changing the custody of the two children from the father to the mother on the ground that this disposition was in the best interest of the children. In Nye v. Nye, 411 Ill 408, 105 NE2d 300, the court said (415): "The guiding star is and must be, at all times, the best interest of the child." Following this precept Jacqueline should be allowed to continue her course at Immaculata High School, and the order should be affirmed.