**Louise Stanton Van Nortwick, Plaintiff-Appellee, v. John Van Nortwick, Jr., Defendant-Appellant.**

**Gen. No. 11,827.**

Second District.
September 15, 1964.
Rehearing denied November 19, 1964.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora (L. M. Ochsenschlager, Robert B. Hupp, Gilbert X. Drendel, Jr., Charles F. Thompson, Jr., and Stephen J. Mrkvicka, of counsel), for appellant.

O'Brien, Burnell, and Puckett & Barnett, of Aurora (William C. O'Brien and Wilson D. Burnell, of counsel), for appellee.

MORAN, J.

The parties to this case were formerly husband and wife. The plaintiff, Louise Stanton Van Nortwick, obtained a divorce from the defendant in March of 1956, on grounds of desertion. A negotiated settlement agreement was incorporated into the decree. This agreement provided that the plaintiff would have the custody of the two minor sons of the parties, Thomas and William. The case comes here on appeal from an order finding the defendant in contempt of court for violation of the following portion of the agreement:

"The husband shall pay all expenses of said children in preparatory school and college, including (but not limited to) tuition, books, food, board, room, clothing, medical expenses, traveling expenses and miscellaneous expenses of all sorts. Selection of the preparatory or college to be attended by each child shall be by joint agreement of the Husband and the Wife."

The agreement further provided that the defendant would pay the plaintiff $150 per month for the support of each son, but that this amount would be reduced to $50 per month while either son was away from home at preparatory school or college. At the time of the divorce, Thomas, the older of the two sons, was nine years of age and was in grade school. Each of the parties remarried after the divorce. The plaintiff continued to reside in Geneva, Illinois, and the defendant moved to Phoenix, Arizona.

There is no substantial disagreement between the parties as to the basic facts relevant to this appeal, although the inferences and conclusions to be drawn from those facts are in sharp dispute.

When Thomas was ready for the eighth grade, in 1960, the plaintiff sought and obtained the defendant's consent to send him to Kent School in Kent, Connecticut, a preparatory school with a five-year curriculum extending from the eighth through the twelfth grades. This school had been attended by the plaintiff's two brothers, and it appears that the plaintiff wanted Thomas to continue in the tradition of her family. The defendant, on the other hand, was not entirely in accord with this choice of an eastern school, and preferred that Thomas attend a school in Arizona. The parties met at the plaintiff's home to discuss the matter, and the defendant did agree to send Thomas to Kent. In return, the plaintiff agreed to waive the $50 monthly payment which the decree entitled her to

232

receive while Thomas was away at school. This meeting was followed by several letters between the parties in which the defendant's agreement to send Thomas to Kent and the plaintiff's agreement to waive the $50 payments were reiterated. The parties devote a great deal of argument to the scope of the defendant's commitment in the conference with plaintiff and the subsequent correspondence. The plaintiff contends that defendant made an irrevocable agreement to send Thomas to Kent for the full five years, come what may. The defendant argues with equal vigor that he agreed only to send Thomas to Kent for his eighth grade year, reserving the right to reconsider the situation from year to year. The parties each point to particular language in the correspondence and in the testimony concerning their conference to support their respective positions. It is not worthwhile to set forth this evidence here, because we do not believe it lends clear support to the contention of either party. There is no evidence of any express language by either party as to the duration of Thomas' stay at Kent. Any conclusion from the language used would have to be based on implication only, and we find no clear implication either way.

Thomas did attend Kent for his eighth and ninth grade years. The defendant paid the bills and there was no communication between the parties. During the Spring vacation of his ninth grade year, in 1962, Thomas visited the defendant in Arizona. It appears that the defendant detected, or thought he detected, that Thomas "had too good an opinion of himself," an attitude the defendant attributed to the atmosphere of the eastern preparatory school. He told Thomas that he thought a year or two of public school, either in Arizona or in Geneva, would be the best thing for him. The defendant also told Thomas that sending him to Kent was a financial burden, and we have no doubt that the defendant was motivated by this economic

factor at least as much as he was by his concern for the boy's personality development. He suggested that Thomas take the matter up with his advisor back at Kent to see what he thought.

Thomas testified that he did discuss the matter with his advisor when he returned to Kent. The advisor told him that it would not hurt him to go to a public school, and that if he wanted to live with his father in Arizona he should do so. Thomas wrote his father a letter setting forth what the advisor had said. During the summer of 1962, the defendant visited Illinois each month and had several discussions with Thomas about moving to Arizona to live with him and attend a public school there in the fall. It appears that Thomas did express a desire to do this, and told the defendant he would inform his mother of the plans. In August, Thomas reported to the defendant that the plaintiff was agreeable to the proposed new arrangement. The defendant then instructed his attorney to take the necessary legal steps to change the custody of Thomas. He also notified Kent School that Thomas would not be back for the fall term. In fact, however, the plaintiff had not agreed to a change in custody or to a transfer from Kent. She had understood that Thomas was merely going to stay with his father in Arizona for the rest of the summer, and had been told nothing of the discussions Thomas and his father had been having. Thomas testified that, "I first discussed this with my mother in August. I didn't tell her the whole thing which was one reason why she consented. I told her that I wanted to live with my father for the rest of the summer. For some reason or other I was afraid; I didn't tell her that I wanted to go to school in Arizona and also I did not say anything about custody. She said it was alright to go out and live with my father."

A reservation was made for Thomas to fly to Arizona in August, and the defendant met the plane at the

airport in Phoenix. Thomas was not on it. The reason he was not on it was that he had finally informed the plaintiff of the full extent of the plans he had made with his father. Plaintiff immediately expressed her opposition to the plan, and requested her mother, Mrs. J. O. Whiteley, of York, Pennsylvania, to lend her the money to send Thomas back to Kent. Mrs. Whiteley, a woman shown by the record to have considerable wealth and a great fondness for Kent School, having sent two sons there herself, sent the plaintiff a check for $2,365 without delay. When Thomas was not on the plane, the defendant telephoned him to find out what had happened. Thomas told defendant that he had decided to return to Kent and that his grandmother was going to pay for it. Thomas inquired as to whether this would be agreeable with the defendant, and the defendant replied that he guessed there was not much he could do about it. His expenses were paid by the plaintiff from the proceeds of a loan she obtained from her mother, Mrs. Whiteley. The defendant sent the plaintiff $50 for Thomas on August 31, along with a letter stating that, ". . . under the circumstances I feel that all his expenses are yours," and continued to send $50 for Thomas each month thereafter. The plaintiff made no reply to defendant's letter, and no one made any demand upon defendant for anything until this petition for a rule to show cause was filed in November of 1962. The petition alleged that the defendant had violated his agreement to send Thomas to Kent School, and sought reimbursement in the amount of $2,772.08, which was the cost at Kent from September 1962, to February 8, 1963, together with attorneys fees.

The order of the lower court provided that the defendant was to pay the amount originally sought for Thomas' expenses through February 8, 1963, and, in addition, whatever further expenses the plaintiff

would incur in sending Thomas to Kent after that date. The defendant was also ordered to pay the plaintiff's legal fees in connection with the petition in the amount of $2,500, and legal expenses in the amount of $61. The order further provided for commitment of the defendant in the event of his failure to pay these sums within sixty days.

The defendant contends on this appeal that the court erred in finding him in contempt and in allowing plaintiff her attorneys fees. We agree on both counts.

■■ The divorce decree did not order the defendant to send Thomas to Kent School. It ordered him to pay Thomas' expenses at any preparatory school the parties might select by joint agreement. They did select Kent in 1960, but, as indicated above, there is nothing in the evidence to show that this selection was intended as a strait jacket the defendant had to wear for five years regardless of circumstances. Nor would we regard such an arrangement with favor even if the evidence showed it to exist. The primary consideration in the choice of a school is the interest of the child involved, and we doubt that many parents would claim the clairvoyance necessary to foresee and provide at some given point in time for every contingency which might affect that interest for a period of five years. And we certainly know of no court which would be disposed to credit such a claim if made. We hold that the agreement made by the parties in 1960 was necessarily subject to change, depending upon the interests of the child and the circumstances of the parties. Therefore, the defendant was not necessarily required by the divorce decree nor by the 1960 agreement to send Thomas to Kent in the fall of 1962 nor at any time thereafter. He had a right to reopen the subject at any appropriate time. If he no longer agreed to Kent as the proper school for Thomas, then Kent was no longer a school selected "by joint agreement of the Husband

236

and the Wife" within the meaning of the divorce decree, and the defendant was not bound by force of the decree to send Thomas there. If the parties were unable to reach a new agreement, the proper remedy was a resort to the court which entered the decree.

■ Here, the parties made no effort to come to an agreement when the problem arose in the late summer of 1962. Certainly the decree imposed at least an implied obligation upon them to make a reasonable effort to do so. However, of the two parties we feel that the plaintiff was the more at fault in this regard. It appears that the defendant was given to understand that Thomas' continued enrollment at Kent meant so much to the plaintiff and her mother that the latter was willing to volunteer to underwrite the cost. Thomas testified, regarding the telephone conversation with his father, "My mother said she would furnish the money for me to go back to Kent, and I told my father over the phone that my grandmother would pay for it. I am afraid I misrepresented the thing to my father by saying my grandmother would pay for it." Granted that the defendant should have inquired further, and should not have relied upon a fifteen-year-old boy as his sole source of information in the matter, it appears that he was actually misled to some extent. At least it was not his conduct which closed the door on further discussion. It was the plaintiff who did that. Unlike the defendant, there is no doubt that she was fully advised of the entire situation. She knew that the defendant did not want to send Thomas to Kent in the fall, and obviously knew that there would be difficulty in securing funds from defendant for that purpose. Instead of discussing the matter with defendant, however, to the end that the mutual agreement contemplated by the decree might be reached or at least attempted, or instead of seeking a ruling from the court—there was still time before the fall term commenced—she made a

unilateral decision to reinstate Thomas at Kent. She was able to do this, of course, because she had a ready source of funds in Mrs. J. O. Whiteley. She did not even bother to make any demand upon the defendant before filing this petition. Quoting her own testimony, ". . . [M]y idea was to get him back in there and argue later." It was not such a good idea, though, because we think that "later" was too late.

■ We hold that the defendant did not violate the terms of the divorce decree by failing to pay Thomas' expenses at Kent during the 1962–1963 school year, and that, in the present posture of this case, there is still no obligation upon him to pay expenses at that school. The lower court erred, therefore, in ordering defendant to pay such expenses and in finding him in contempt.

■ The defendant objects to the allowance of attorneys fees in any amount, and objects especially to what he claims is an excessive fee awarded here. We do not need to reach the question of excessiveness, because, in view of the plaintiff's conduct and the lack of merit to her petition, we hold that she should be awarded no fees at all.

■ ■ Two other aspects of the lower court's order can be disposed of briefly. After the hearing was concluded, the plaintiff filed an amendment to her petition, praying that henceforth she be given the sole right to choose the schools not only for Thomas but also for William, the younger son who was not involved in the case. The Chancellor granted this additional prayer, apparently on the basis that defendant had demonstrated his unwillingness to abide by the terms of the decree as regards the choice of schools, regardless of which child might be involved. This portion of the order was also erroneous. The provision of the original decree concerning the right of the defendant to participate in the choice of schools for the

238

children could be changed only if there had been a relevant change in circumstances since the entry of the original decree. Taylor v. Taylor, 32 Ill App2d 45, 48, 176 NE2d 640 (1st Dist 1961). In view of what we have stated above, we hold that there had been no such change in circumstances to support a change in the decree.

The Chancellor also held that the plaintiff's agreement in 1960 to waive the $50 monthly payment while Thomas was at Kent was null and void, as not being supported by consideration, and ordered the defendant to make these payments. With this we agree only in part. During Thomas' first year at Kent the defendant did pay the expenses; and therefore, the waiver of $50 payment was supported by consideration during that year. However, when the plaintiff began to pay all of the expenses at Kent, the consideration for the waiver of the $50 per month payment ceased.

Further, the regular $150 monthly support provision of the decree was to be reduced to $50 per month during the time that the children were away from home attending school at the defendant's expense. This too was based upon the fact that the school expenses would include room and board. Since the plaintiff paid the school expenses, she therefore paid for the support of Thomas. This was rightfully the duty of the defendant. The Chancellor, we feel, should enter an order upon the defendant to pay the sum of $150 per month for that period of time that Thomas attended Kent at the expense of the plaintiff, and we so direct.

The order of the trial court is reversed in part, affirmed in part and remanded with directions.

ABRAHAMSON, P. J. and CARROLL, J., concur.