**Linda Collings, Plaintiff-Appellant, v. Robert Collings, Defendant-Appellee.**

Gen. No. 69–123.

Second District.

February 20, 1970.

Berry, Simmons and Coplan, of Rockford, for appellant.

Victor and Gaziano, of Rockford, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a post-divorce decree child custody order entered May 14, 1969, in the above-entitled proceeding.

The divorce decree, which granted custody of Robert, then eight years old, to the plaintiff, was entered July 3, 1968, on the ground of mental cruelty. It found that the plaintiff was a fit and proper person to have the care, custody and control of Robert, and unconditionally awarded such custody to her.

The defendant, the former husband of the plaintiff and the father of the child, Robert, filed a petition wherein he prayed that he be granted the custody of his son.

The evidence, submitted on behalf of the defendant for a change of custody, indicated that the plaintiff was going with Sam Ely, a man who was married but in the process of obtaining a divorce, and who, at the time, was living with two other men in an apartment. There were times when the plaintiff and her son stayed overnight at Ely's apartment in Beloit, Wisconsin. On these occasions, the plaintiff and Ely had entertained friends, and the plaintiff did not want to awaken her son late at night to return to Rockford. On these evenings, she slept with her son.

The evidence also indicated that Ely had stayed in the plaintiff's apartment overnight on ten occasions, and that both the plaintiff's father and Robert, her son, were there at these times. After leaving work, the plaintiff, accompanied by Robert, would often meet Ely late in the

■■■■■■■■■■■■■■

afternoon at a neighborhood tavern in Beloit. On these occasions, the boy played with other children who lived upstairs. Apparently, the plaintiff and the defendant had also taken Robert there prior to their divorce.

The defendant saw Robert often. He cared for him two nights a week—while the plaintiff was in school and when she had her hair set. The defendant is now married to a woman who has five children, ages six to eleven, and they live in a ranch home with five bedrooms, three on the first floor and two in the basement.

■■■■ While the provisions relative to child custody in a divorce decree are always subject to modification by the court, this does not mean that there is no permanence or finality to the custody orders in such a decree. In the absence of proof that the welfare of the child requires a change in its custody, permanent custody should not be subject to constant or spasmodic variation, where the decree granting custody was not conditional with reference to changes therein enumerated. Dunning v. Dunning, 14 Ill App2d 242, 247, 144 NE2d 535 (1957); Wade v. Wade, 345 Ill App 170, 181, 102 NE2d 356 (1951). Where a child's welfare is at stake, care must be taken that its welfare is not impaired by being shuttled between contesting parents. Jenkins v. Jenkins, 81 Ill App2d 67, 74, 225 NE2d 698 (1967).

■■ In Thomas v. Thomas, 233 Ill App 488 (1925), at page 493, the court stated the rule regarding change of custody, as follows:

> "A decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child."

Also see: Nye v. Nye, 411 Ill 408, 416, 105 NE2d 300 (1952) ; Eggemeyer v. Eggemeyer, 86 Ill App2d 224, 231, 229 NE2d 144 (1967).

The divorce decree in the case at bar awarding the custody of Robert to the plaintiff was final as to the conditions then existing, and it should not have been altered unless there had been a substantial change of conditions thereafter, or unless there were existing material facts, unknown to the court, which affected Robert's welfare. Hirth v. Hirth, 59 Ill App2d 240, 244, 207 NE2d 114 (1965) ; Bulandr v. Bulandr, 23 Ill App2d 299, 303, 162 NE2d 585 (1959).

■ ■ The change of conditions which will justify altering the provisions of the decree for divorce as to custody, are not limited to conditions relating solely to the custodial parent, and evidence that he or she has become unfit for custody. Frank v. Frank, 26 Ill App2d 16, 19, 167 NE2d 577 (1960). The change of conditions warranting a modification of the custody decree are any which affect the welfare of the child. Nye v. Nye, supra; Eggemeyer v. Eggemeyer, supra; Hirth v. Hirth, supra. While not an inflexible rule, it is generally considered that the mother is the most beneficent custodian of a child of tender years, if she is a fit person. Nye v. Nye, supra, 414; Arden v. Arden, 25 Ill App2d 181, 189, 166 NE2d 111 (1960) ; Bulandr v. Bulandr, supra, 302.

While the defendant's petition states only that the best interests of the child required that his custody be with the defendant, without stating any basis therefor, it is apparent from the record that the defendant intended to establish that there had been a substantial change of conditions in that the plaintiff had been guilty of immoral conduct which rendered her unfit to have the continued custody of Robert.

129

In Nye, supra, 415 and 416, the Court seemed to clearly indicate that even the fact of admitted adultery might not be sufficient to deprive a mother of custody. If there was no evidence that the imprudence was such as to be detrimental to the child's welfare, such indiscretion alone may not be grounds for changing the custody of the child; it is the best interest of the child which is the guiding star. Jayroe v. Jayroe, 58 Ill App2d 79, 82, 206 NE2d 266 (1965).

There is no great factual dispute in this case. The plaintiff did spend several nights in Ely's apartment when they had entertained others and the hour was late. She had Robert, her son, with her and slept with him. Likewise, Ely had spent nights at the plaintiff's house, but at a time when both her father and Robert were present. While this conduct may not have been very prudent, it was not sufficiently indiscreet to deprive the plaintiff of the custody of her son, as unconditionally awarded to her in the final divorce decree.

The fact that she met Ely at a neighborhood bar in the afternoon and had Robert with her, does not suggest that his welfare would best be served by altering the custody. Both the plaintiff and the defendant had frequented the bar when they were married and had taken Robert with them. The boy, apparently, knew and played with several children who lived in the building. The other facts disclosed by the evidence are even less consequential.

The record in this case fails to show that the plaintiff neglected Robert. It does not show such changed conditions that his welfare would dictate a modification of the custody provisions of the divorce decree.

We are aware that the court talked to the child in chambers, with the approval of the parties. What was said or discussed there was not made a part of the record and cannot, thus, be considered upon review. Stickler v.

130

Stickler, 57 Ill App2d 286, 291, 292, 206 NE2d 720 (1965).

After a careful study of the record, we are satisfied that the modification of the divorce decree as to custody of Robert was erroneous as a matter of law. Thus, the order of the trial court must be reversed.

Order reversed.

ABRAHAMSON and MORAN, JJ., concur.