REBECCA JACOBS, Plaintiff-Appellant, *v.* LARRY JACOBS, Defendant-Appellee.

(No. 59893;

First District (5th Division)—December 13, 1974.

Robert F. Meersman, of Mt. Prospect (Edward G. Wells, of counsel), for appellant.

Sherwin Greenberg, of Skokie, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order modifying a decree of divorce.

Plaintiff and defendant were married in New York in 1963 in a Jewish religious ceremony. One child, Jennifer, was born to them of this marriage. In December, 1969, plaintiff petitioned for and was awarded a divorce in the Circuit Court of Cook County. That decree awarded the sole care, custody, control and education of the minor child Jennifer, then 4 years of age, to plaintiff mother. Prior to the divorce, both plaintiff and defendant were of the Jewish religion. However, neither party actively practiced their faith during the marriage.

After the divorce, each of the parties remarried. Defendant married a

Protestant woman who converted to Judaism. Plaintiff married a Mr. Gerhardt, of the Catholic faith, and converted to Catholicism. Plaintiff subsequently had several other children, all of whom are baptized and raised in the Catholic faith. She now lives in New York, where Mr. Gerhardt is employed, while defendant remains in Illinois.

In November, 1971, defendant petitioned to amend the decree of divorce and award custody of Jennifer to himself. It appears that since his remarriage he had become extremely devout and orthodox in his practice of the Jewish religion. His petition alleged, in essence, that Jennifer was receiving instruction in the Catholic faith, was being forced to participate in Catholic services, and that said conduct was detrimental to the proper care, well-being and education of the minor child. For these reasons, the father contended plaintiff was unfit to have custody and prayed that custody be awarded him.

The court directed a psychiatric examination of defendant, plaintiff and Jennifer. In his letter to the court following the interviews, the examiner reported:

> "Whereas Mrs. Gerhardt appears to sincerely feel that a change to Catholicism would be for Jennifer's benefit in terms of her feeling more a part of the family, Mr. Jacobs' desire is much more predicated on an unconscious selfish motivation."

The examiner goes on to state that he feels the issue is "not significant" to the child but that "Mrs. Gerhardt would be *more* accepting of Jennifer being raised Jewish than Mr. Jacobs would be of Jennifer being raised Catholic." He accordingly advised the court to allow the child to attend Catholic services with her mother and stepfather but also to attend Hebrew school in New York. Following the psychiatrist's recommendation, the court denied the change of custody but did order that Jennifer "be raised in the Jewish Religion until her adolescence at which time she may have the right to choose her own religious persuasion or until further order of this Court." It was further ordered that she "be exposed to Jewish Religious training in a Hebrew school in the area and vicinity of her home," but that nothing shall preclude her from "attending religious services in the Catholic Church with her mother, stepfather and step brothers and/or step sisters." The mother brings this appeal from that order.

OPINION

It is well settled in Illinois that a decree for divorce cannot be modified or amended unless there has been a material change of circumstances since the entry thereof. (*Taylor v. Taylor*, 32 Ill.App.2d 45, 48, 176 N.E.2d 640; *Dunning v. Dunning*, 14 Ill.App.2d 242, 144 N.E.2d 535;

*Wade v. Wade,* 345 Ill.App. 170, 102 N.E.2d 356.) A decree fixing the education of children is final and *res judicata* and should not be altered or amended unless new facts have arisen since the entry of the decree which make it necessary, in the best interests of the child, that the decree be changed. (*Taylor v. Taylor, supra,* at 48; *Wade v. Wade, supra.*) In a post-decree hearing to modify the child-custody provisions of a decree, the party seeking the modification has the burden of proving altered conditions. (*Eggemeyer v. Eggemeyer,* 86 Ill.App.2d 224, 230, 229 N.E.2d 144; *Hirth v. Hirth,* 59 Ill.App.2d 240, 207 N.E.2d 114.) Every presumption is indulged in favor of the validity of the decree, and if its provisions are to be changed, the burden of proof is on the moving party to show why the change should be made. *Eggemeyer v. Eggemeyer, supra,* at 230; *Hirth v. Hirth, supra,* at 243.

██ In all matters concerning the custody of children, the paramount issue is their welfare. The fact of changed conditions, in itself, is not sufficient to warrant modification of the custody provisions of the decree, unless such changed conditions affect the welfare of the child or children. (*Eggemeyer v. Eggemeyer, supra,* at 231; *Hirth v. Hirth, supra,* at 244.) As stated in *Dunning v. Dunning,* 14 Ill.App.2d 242, 246, 144 N.E. 2d 535, and reaffirmed in *Taylor v. Taylor, supra,* at 48: " '* * * "The changing circumstances must be, obviously, those that affect the children, —not those that concern the parents." ' "

Here, the original divorce decree gave Jennifer's mother the sole responsibility for the care, custody, control and education of the child. The right to control the education of the child includes all facets and dimensions of that term. (*Cf. People ex rel. Burr v. Fahey,* 230 Ill.App. 143, 153—4.) Yet, defendant here petitioned the court to modify that decree and order that the child receive education in a Hebrew school. In oral argument here, in support of the trial court's order regarding the child's attendance in Hebrew school in New York, defendant's attorney stated:

> "Obviously, if the Hebrew School is there, then in that community there is the opportunity for the child to receive the Jewish education. Judaism, basically, as was brought out in the trial court, is a religion which is education centered, and that's why the issue of the child's education seems to become important."

██ Custody may, and frequently does, embrace provisions for religious training, and a modification of a custody order of this kind is governed by the same rule requiring a material change of circumstances. (*Gottlieb v. Gottlieb,* 31 Ill.App.2d 120, 175 N.E.2d 619.) To justify such a modification of the original decree here, it was incumbent upon the father to show some change in circumstances affecting the welfare of

the child. The psychiatric report indicated that (1) the issue of religious education was "not significant" to the child; and (2) whether or not Jennifer received instruction in the Jewish religion would have no significant effect upon her. However, the psychiatrist felt the mother could adjust more easily to the child being raised Jewish than the father could adjust to the child being raised Catholic, and as a result he felt that instruction in the Jewish faith would improve the child's relationship with her natural father. No consideration was apparently given to the possible effect on Jennifer of the reaction of the stepfather and the stepbrothers and/or stepsisters with whom Jennifer resides during the greater portion of the year.

Counsel indicate that this is a matter of first impression in Illinois. We are not convinced of its novelty. Similar questions arose before this court in *Gottlieb v. Gottlieb, supra.* There, provisions for the religious instruction of the children in the Jewish religion were incorporated in the divorce decree. The custodian subsequently enrolled the child in a parochial school and contended that the child had converted to Catholicism. The trial court modified the original decree, striking the provisions for education in the Jewish religion. This court reversed, stating at pages 136-137:

> "Defendant raises no question concerning the fitness and competency of plaintiff to retain Steven's custody. He asks only that she abide by her agreement and the decree, that she raise Steven in the Jewish faith and send him to a public school. When the chancellor saw fit to incorporate paragraph 14 in the decree, it must have been his considered judgment that the interest and welfare of the children would best be served by its provisions. It should not be inferred from what has been said that the interests of Steven would not be well served if he were educated in another religion, but it is not within the province of the court to weigh one faith as against another. 'The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect.' Watson v. Jones, 13 Wall. 679, 728 (1871).
>
> We do not hold that agreements of parties with respect to the religious training of children should be enforced in all situations, but in the absence of clearly established circumstances indicating that the best interests of the child would be served by modification we do not feel that solemn agreements incorporated in a decree and sanctioned by the court should be so lightly cast aside * * *."

To the same effect is this court's decision in *Taylor v. Taylor*, 32 Ill. App.2d 45, 176 N.E.2d 640. There, the decree awarded the mother the

right to control the religion in which each child was to be raised and awarded the father the right to determine the education which each child was to have and the schools each was to attend. The mother, who had custody of the children, enrolled them in Catholic schools, contending such was her right under the decree awarding her he right to control the religion of the child. The father sought to send one child to a nonsectarian boarding school. The trial court ordered that portion of the decree allowing the father to determine the education of the children stricken as interfering with the mother's right to control the religious education of the child. This court again reversed, finding no change of circumstances to justify the modification of the original decree. It was stated, at page 48, "Nothing has occurred in the instant case which would warrant the court in modifying the divorce decree."

While these decisions involve specific provisions regarding religious education founded in consensual agreements incorporated in a divorce decree, we feel the same principles apply here. As stated in *Jacobs v. Jacobs*, 328 Ill.App. 133, 139, 65 N.E.2d 588, "After a decree is rendered, the rights of the parties rest upon the decree and not upon their agreement." The original decree here awarded the mother the "sole care, custody, control and education of the child." We believe that the award of control and education must be viewed as embracing all the ramifications of those terms. In this regard, education in a limited sense involves the right here to determine, at the least, the schools the child shall or shall not attend. A broader interpretation of the term might include "religious education," but we need not venture that far. The original decree of the court awarded the mother the right to control the education of the child. That right encompasses the right to select the schools the child shall attend. No material change of circumstances affecting the child's welfare was presented to the trial court. The father's recent activity as an orthodox religionist is not such a material change of circumstances affecting the child's welfare as to justify modification of the original decree.

■■ We note that the trial court did not believe the circumstances were such that the welfare of Jennifer required a change of custody. We agree, and it is our belief that the court improperly based its decision to modify on which of the parents would be hurt less. Although of importance collaterally insofar as the court's ruling will affect the child's relationship with that party, we do not feel that such a change of circumstances affecting Jennifer's well-being has been presented to justify changing the original decree. We are of the opinion that defendant has not carried his burden of proving such a change of circumstances that the best interests of the child necessitates modification of the decree.

Defendant has referred this court to *Boerger v. Boerger,* 26 N.J. Super. 90, 100, 97 A.2d 419, 424 (1953), for the proposition that, " ' * * * in dealing with the custody and upbringing of an infant, the welfare of the child is the controlling consideration * * *.' " There it was also stated that a court is permitted "* * *. to exercise its discretion in a manner that will meet the circumstances of each case." We do not disagree with this principle. (*Eggemeyer v. Eggemeyer, supra.*) We have merely found that the best interests of the child here do not justify a modification of the decree.

■■ Although the judgment below must be reversed, it should be recognized that the trial court was faced with an extremely difficult decision. From the record, it seems apparent that regardless of the outcome, one of the parties would not be reconciled with the decision, and this discontent would be reflected in some way upon the innocent child. We would urge, therefore, that in the child's best interests, the mother will not foreclose her daughter from gaining an awareness of the Jewish religion and its heritage and thus be able, at some time in the future, to make her own choice of religion.

The order of the trial court modifying the original decree here is reversed, and the cause is remanded with directions to enter an order denying the petition of defendant.

Reversed and remanded with directions.

BARRETT and DRUCKER, JJ., concur.