TENNA L. HENDRICKSON, Respondent-Appellant, *v.* JAMES E. HENDRICKSON, Petitioner-Appellee.

Second District   No. 76-239

Opinion filed June 8, 1977.

Daniel T. Williams, Jr., of Roszkowski, Paddock, McGreevy & Johnson, of Rockford, for appellant.

Vern L. Davitt, of Rockford, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

■■ This is an appeal from the judgment of the trial court granting petitioner's prayer for a change of custody. The decision of this court is made more difficult by the fact that the petitioner has failed to file a brief. While we might reverse *pro forma* under the circumstances, we think it would be improper to do so where the decision might affect the future of children and we therefore proceed to consider the case on its merits, so far as we can do so without the petitioner's brief to assist us.

James E. and Tenna L. Hendrickson were married in 1965 and had two children, David, born June 15, 1967, and Amy, born February 24, 1969.

In July 1974, Tenna filed suit for divorce on the ground of mental cruelty. James counterclaimed for divorce on the ground of adultery. Tenna's divorce action was dismissed for want of prosecution and James' counterclaim was amended to show the grounds for divorce as mental cruelty.

On April 29, 1975, a decree of divorce was entered which did not specifically award custody to the wife but provided that the wife would continue to occupy the marital home and that the husband would pay $55 per week for the support of the two children. She thus retained actual custody although the decree did not so actually provide.

In February 1976, James E. Hendrickson filed a petition for change of custody of the two children, alleging that he has since the divorce remarried and is able to provide "home facilities" to the children and that Tenna is "cohabiting with a man out of wedlock, openly in the presence of the minor children," and that she is "unable to provide said minor children with the emotional stability and nurture which is in the best interests of said children."

Tenna L. Hendrickson denied the allegations as to living with a man out of wedlock. At the hearing on the petition for change of custody, plaintiff (petitioner here) produced two witnesses who were neighbors of the

defendant (respondent here), both of whom testified to the presence of Arnie Olson (the same person named by the husband in his original counterclaim charging adultery) at the respondent's home during weekends and that his car was parked in front of her house many times all night. The respondent did not deny that Olson had stayed in her home all night at times. Both she and Olson testified they loved each other and intended in the near future to marry. At the time of the hearing, however, he was no longer living in the house, having bought a house of his own and it was the respondent's testimony that she had asked him to leave in order not to jeopardize her right to custody of the children.

The testimony indicated the children were on good terms with their father and with his new wife and visitation to the petitioner's home was regular and frequent. There was no testimony indicating the children were in anyway neglected by the respondent or unhappy in their present circumstances. The argument of counsel for the husband was that Olson and respondent had lived together without being married and that he apparently still came to the house at irregular hours and that this made an unwholesome atmosphere for the children which they should not be exposed to, therefore, they would be better off living with their father.

There was not, however, any evidence that the children had ever noticed anything objectionable or had questioned their mother regarding Olson's presence at the time he was living there. The respondent had at one time told them that Olson was rooming in the house. There was no evidence that the children had reacted in anyway to Olson's presence. In any event, both the respondent and Olson testified that he was not living there at the time of the hearing and did not intend to live there again, until they were married, and that they intended to marry in the near future. David was nine and Amy seven at the time of the hearing.

■■ The question of custody, of course, is oriented toward the best interest of the children and where their interests clearly lie with a change in custody the court will grant such change. On the other hand, as was said in *Vysoky v. Vysoky* (1967), 85 Ill. App. 2d 306, 309-10:

> "To justify a modification of the decree and a change of custody, the evidence must establish that the parent to whom the children were originally awarded is unfit to retain custody or that a change of conditions makes a change of custody in their best interest. (Citation.) The party seeking to alter the custody provisions has the burden of proving that the children's best interest requires such a change * * *."

In *Nye v. Nye* (1952), 411 Ill. 408, 415, the court, in spite of sexual indiscretions by the mother, refused to change the custody of the child, saying:

> "Where the mother is able to care for her minor daughter and is not

shown to lack the proper attributes of good motherhood, past misconduct, where the evidence indicates no probable future misconduct, should not be a basis for denying custody to the mother. To do so would be not only to punish the mother for her past misconduct, but, more important, would punish the child by denying her a mother's care and guidance. It is not the purpose of this court, nor of any court, to so punish an innocent child. The guiding star is and must be, at all times, the best interest of the child."

In *Van Buskirk v. Van Buskirk* (1974), 19 Ill. App. 3d 647 (abstract), this court refused to take the custody of the child away from the mother under circumstances very similar to those now before us. Likewise, in *Christensen v. Christensen* (1975), 31 Ill. App. 3d 1041, we granted permanent custody of the children to the wife, although the testimony at the custody hearing established that she was living with a man she was not at that time married to. As in the present case there was no evidence the mother had in anyway neglected the children or that they had been affected by the irregular relationship, which the parties intended to normalize in the near future. See also *Huey v. Huey* (1975), 25 Ill. App. 3d 20, and *Bergan v. Bergan* (1976), 42 Ill. App. 3d 740.

■■ The trial court in the case before us found both parents to be fit persons to have custody of the children. The question, therefore, was whether the alleged indiscretion of the respondent was of such a character as to overcome the usual presumption in favor of the person having present custody. We think that that is not established by the testimony in this case. The trial court was properly concerned that the children, if left in the custody of the mother, might be exposed to a relationship between her and Mr. Olson which was "a more loosely knit situation than a husband and wife situation is" and might come to believe such a situation to be normal, to their detriment and the detriment of the family as an institution.

■■ Our censorship of the respondent's conduct, however, can properly relate only to its effect on the children. The testimony of both the respondent and Olson was that he had moved out and did not intend to return and that they did not intend to live together until they were married. The respondent's past indiscretion was established but that it is realized by and affected the children, was not indicated by anything in the testimony. On the other hand, the trial court acknowledged that the respondent was a "fine person" and that he was "impressed" with Mr. Olson. They are mature adults and their sexual relationship, if any, is not relevant here unless it be shown as having a negative effect on the children. The trial court feared it might have in the future, but we do not think this is substantial and immediate enough to deprive the respondent

of the custody of her children, substituting a stepmother in place of their own mother at their young age. Based on the cases noted above and our own reading of the import of the testimony at the custody hearing, we do not think a case has been established for a change in custody.

■■ While conceding the correctness of the trial court's general observations as to the desirability of upholding the family as an institution, we are not persuaded that this general philosophy should be applied to the specific facts before us so as to curtail the relationship between the mother and her young children. Using the "guiding star" of the children's best interest, we do not think such a change necessary as a result of the respondent's alleged indiscretion.

The judgment of the circuit court of Winnebago County is reversed.

Judgment reversed.

SEIDENFELD and BOYLE, JJ., concur.