MARY GEHN, Plaintiff-Appellant, *v.* ALLAN GEHN, Defendant-Appellee.
Third District   No. 76-517

Opinion filed August 31, 1977.

Marshall E. Douglas, of Jackson, Douglas, DePorter & Schmidt, of East Moline, for appellant.

Dennis A. DePorter, of Rock Island, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Rock Island County which modified a decree of divorce by transferring custody of minor children from their mother, the plaintiff Mary Gehn, to their father, the defendant Allan Gehn.

The parties to this appeal were married on December 24, 1963. Their marriage was terminated on October 27, 1975, when the plaintiff obtained a divorce from the defendant on the grounds of extreme and repeated mental cruelty. The decree of divorce had incorporated therein a stipulation which provided that the plaintiff mother should have the custody of the five minor children of the parties during the school year and the defendant would have custody during the school summer vacation months. The defendant remarried on December 13, 1975, and thereafter filed a petition to modify the decree of divorce by granting him custody of the children. In his petition to modify the defendant alleged that the plaintiff was no longer a fit and proper person to have custody of the children and that the plaintiff had neglected the children and had failed to provide the children with a suitable environment as to cleanliness, care and supervision. The petition further alleged that the children had been exposed to an extramarital relationship which was morally detrimental to them. At the time of the hearing on the petition the ages of the children were as follows: Christina, age 12, Robert, age 11, Eric, age 8, Chad, age 6, and Heather, age 5.

At the conclusion of the hearing the trial court reversed the custody arrangement contained in the decree of divorce by granting the defendant custody of all the children during the school year and the plaintiff was to have custody during the summer vacation months.

During the hearing to modify the divorce decree it was well established that the plaintiff met Mr. McNeff on November 30, 1975, which was approximately one month after being divorced, and that since that time she and Mr. McNeff have been seeing each other and been together on many occasions. The plaintiff admitted that she had absented herself from the children at least 80 times and that on most of these occasions she was with her boyfriend, McNeff. She testified that usually she left the children to go to her boyfriend's house at approximately 9 p.m. and would return home a couple of hours later, though on occasion she did not return until 1:00 or 1:30 a.m. While the plaintiff was visiting her boyfriend the four youngest children were placed in charge of the oldest child,

Christina, age 12, who served as a babysitter. The child Christina was usually up and awake when her mother returned home and the next morning it was necessary for her to arise at 7 a.m. in order to go to school.

When the plaintiff met McNeff he was separated from his wife but not divorced. The plaintiff admitted that she had taken the five minor children for overnight visits at her boyfriend's house and that on one occasion the visit lasted for at least a two-week period. The house of the boyfriend, McNeff, consisted of four rooms, two of which were bedrooms. When visiting in this home the sleeping arrangements were that the plaintiff would share one bedroom with her boyfriend, the girls would share the other bedroom, and the three boys, along with the boyfriend's son, would sleep on the living room floor.

The plaintiff's relationship with her boyfriend resulted in her becoming pregnant which was terminated by a miscarriage. The two older children, Christina, age 12½, and Robert, age 11½, were aware of the fact that their mother had become pregnant by a man not her husband.

The plaintiff during her testimony made it abundantly clear to the court that if the defendant's petition to change the custody of the children was denied and that if she continued to have custody she would still see the boyfriend McNeff during the evening hours on some nights each week.

The plaintiff's testimony also disclosed that the minor child Chad, when six years of age and while in her custody, had appendicitis and after complaining of stomach pains for three days was hospitalized. The child's appendix ruptured as he was being taken to the operating room and peritonitis developed. While this child was in the hospital the plaintiff left with her boyfriend to visit a farm some 200 miles from the hospital. As a result of her absence the hospital would not release the child as scheduled. The plaintiff testified that unforeseen difficulties in transportation prevented her from being at the hospital when her son Chad was to be released.

While there is testimony to the effect that the five minor children liked the boyfriend McNeff, the plaintiff on cross-examination admitted that McNeff had on one occasion spanked the child Heather severely enough to leave bruises.

The plaintiff admitted that her former husband, the defendant, took proper care of the children, saw that they were well fed, received proper medical attention and that he made the required child support payments.

Evidence adduced during the hearing is conflicting as to whether the house of the plaintiff was in a state of uncleanliness or just in a state of disarray as would be expected when it was inhabited by five children. The plaintiff was employed for a time subsequent to her divorce, but was unemployed at the time of the hearing to modify the decree of divorce.

The defendant, as we have stated, has remarried, is a graduate of

Augustana College, and is employed by International Harvester Company. He is also a part-time instructor at Black Hawk College. The defendant resides in a three-bedroom, two-bath home in Rock Island.

A further recital of facts adduced during the hearing to modify will be set forth as they become pertinent to the issues raised in this appeal.

The overall issue raised by the plaintiff is whether the trial court erred in granting a change of custody as to the minor children of the parties. This broad issue requires a determination of two questions, first, was the trial court's decision contrary to the manifest weight of the evidence, and secondly, were the circumstances alleged to have occurred subsequent to the divorce of the parties sufficient to warrant a change of custody.

■■ Directing our attention to the "manifest weight" question, we at the outset must recognize that it is well settled in Illinois that the paramount question in awarding custody of minor children is the welfare and best interests of the children. *Brady v. Brady* (1975), 26 Ill. App. 3d 131, 324 N.E.2d 645; *Girolamo v. Girolamo* (1972), 5 Ill. App. 3d 627, 283 N.E.2d 713; *Eggemeyer v. Eggemeyer* (1967), 86 Ill. App. 2d 224, 229 N.E.2d 144.

In the instant case it is quite evident that even by our present-day moral standards, which are far from puritanical, the plaintiff was nevertheless guilty of questionable morality. As we have heretofore stated, she became deeply involved in an affair with her boyfriend, who was separated but still married to his wife. Such involvement resulted in the plaintiff becoming pregnant which was terminated by a miscarriage. The record in this case supports a finding that the plaintiff had no qualms in exposing and exhibiting to her children her illicit relationship with her boyfriend. The plaintiff admits her immoral conduct, but argues that no testimony was presented which would show that her conduct had any ill effects upon the children. It might be not only difficult but impossible to present evidence showing objective effects that such conduct would have on minor children. The effects may well be subjective ones that will raise their ugly heads and make their presence known at some future time. Certainly the conduct of the plaintiff cannot be regarded as good and wholesome moral training. We further note that the plaintiff utterly failed to display any degree of penitence as far as her conduct was concerned, but on the contrary assured the court that if she continued to have custody of the children she would persist in the overnight sojourns to her boyfriend's house with her five children.

The conduct of the plaintiff also resulted in the children being neglected. She continuously left the home at night and imposed the responsibility of babysitting on a 12½-year-old daughter. She left on a lengthy trip when one child was dangerously ill in the hospital.

In our opinion a case strikingly similar to the instant case is *Hahn v.*

*Hahn* (1966), 69 Ill. App. 2d 302, 216 N.E.2d 229. In *Hahn* the reviewing court, in affirming a change of custody from a mother to a father, stated: "* * * Dale's [the mother] conduct cannot be considered conducive to the proper moral training that children of tender years need. We agree with the trial court that the record here is void of evidence that would give any assurance that Dale intended to abandon her ways. In matters concerning the custody of infant children the court will not disturb the determination of the trial judge who has heard the evidence and has had an opportunity to observe the parties, unless it appears manifest injustice has been done. Rodely v. Rodely, 28 Ill. 2d 347, 350, 192 N.E.2d 347." (69 Ill. App. 2d 302, 305.)

In the instant case we cannot conclude that the order of the trial court is manifestly unjust.

We next direct our attention to the question as to whether there has been a change of circumstances subsequent to the divorce of the plaintiff and defendant which would support the order of the trial court which changed the custody of the children.

■■ The record is replete with evidence which supports a finding that there were many changes of circumstances which occurred subsequent to the divorce of the plaintiff and defendant, *i.e.*, the defendant father remarried, the plaintiff mother did not. The defendant was well employed while the plaintiff became unemployed. The plaintiff acquired a boyfriend and embarked upon a course of immoral conduct. The conduct of the plaintiff after her divorce clearly resulted in the neglect of the five minor children and most certainly did not provide them with a proper moral atmosphere such as is desired when children are at an impressionable age. Without making a repetitious recital of the evidence, we merely state that the record discloses a large number of changed circumstances, many of which affected the children adversely. See *Fears v. Fears* (1972), 5 Ill. App. 3d 610, 283 N.E.2d 709, and *Maroney v. Maroney* (1969), 109 Ill. App. 2d 162, 249 N.E.2d 871.

For the reasons set forth the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.