380 So.2d 446 (1979)
Robley H. HACKLEY, II, Appellant,
v.
Marilyn B. HACKLEY, Appellee.
No. 78-887/NT4-30.
District Court of Appeal of Florida, Fifth District.
October 3, 1979.
Joseph Jordan of American Civil Liberties Union Foundation of Florida, Inc. of Bailey & Jordan, West Palm Beach, for appellant.
Leonard V. Wood, Altamonte Springs, for appellee.
LETTS, GAVIN K., Associate Judge.
An ex-husband here appeals the cancellation of his overnight visitation privileges with his 5 year old daughter solely because he is living in an unwed state with another woman. Describing himself as "old fashioned," the judge, at the ex-wife's request, withdrew the child's overnight visits with her father. Under the trial court's ruling, visitation rights, other than those of a spend-the-night variety, were continued undisturbed. We relinquish jurisdiction for a further hearing.
This is a vexing case. Not only are we mindful of the most difficult problem *447 presented to the trial judge in this case, but more to the point, we are asked to hold that a respected and competent jurist abused his discretion by concluding that a household in which two unwed adults of the opposite sex live together is not a suitable overnight environment for a 5 year old girl.
It is urged upon us that the mores of society have changed and regretfully we must agree that they have. Nonetheless, and anachronistic though it may be, it is our conviction that such an arrangement is far from ideal lest minor children learn by example from this so-called norm and themselves later follow it. See Brown v. Brown, 218 Va. 196, 237 S.E.2d 89, 91 (1977).
None of us, in the daily dialogue with ourselves, friends, family and the facts of contemporary life, would be so naive as to argue that the live-in arrangement here described is anything but commonplace nowadays. Moreover, we also accept the premise that many of our younger generation see little, if anything, wrong with such a liaison  for economic reasons if no other. However, such practices do not, by their profusion, automatically make such an environment desirable for a 5 year old, and we are not yet prepared to throw all of the hallowed concepts of American family life out the window.
There remains nevertheless the crux of the problem which cannot be ignored, namely, the total welfare of the child must be uppermost. Even as the issuance of an official registration certificate cannot assure the mechanical welfare of an automobile, nor can the presence, or absence, of an official marriage license be in and of itself finally determinative of the emotional welfare of a minor child.[1] All of us have knowledge of ceremonially correct households which are nevertheless emotional cesspools and the breeding ground for abnormal and emotionally unstable children.[2] By contrast, many of us also know emotionally stable adults of the opposite sex who "live together," yet with whom we would gladly entrust our children even though we might more gladly do so if a licensed marriage relationship existed. Faced by such a dichotomy we finally reach the point on which we must disagree with the trial judge, namely that he did not consider any factor adverse to the individual welfare of this particular child, other than his built-in dislike for such a live-in arrangement. We confess agreement with his dislike, but believe the present state of the law requires him in addition to give attention elsewhere.
Our own Supreme Court has recently held that the fact that a mother commits adultery does not by itself disqualify her from having custody of her child Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). Another slightly older Supreme Court case said the same. See Smothers v. Smothers, 281 So.2d 359 (Fla. 1973). This latter case, however, is not unequivocal, for the court there suggested that a live-in arrangement would have more of an adverse impact on the three children than "frequent" acts of adultery. We might or might not agree with that, however the Smothers case is otherwise distinguishable from the case now before us. In the latter, both the father and his girlfriend are not married so that "open adultery" is not involved, despite the fact that the trial judge in this cause so mis-labeled it. Also in the Smothers case the court considered temperamental outbursts, corporal punishment of the children and arguments over visitation, all three of these negative aspects engaged in by the person living-in. No such negative conduct is alluded to in the case at bar. In truth the ex-wife and mother used to live with the father's girlfriend and entrust this very same child in the girlfriend's care for extended periods and sometimes overnight. In fact the only evidence in the record before us is of a loving relationship accompanied by the father's assurance that "nothing [is] ever done or said in front of ____," who has a separate bedroom.
*448 A further distinction between the case at bar and the two Supreme Court cases above referred to is that the latter two involved a custody challenge, whereas the challenge here is largely to a once-a-month overnight weekend visitation.[3] However, this final distinction does not alter our conclusion, for if illicit sex will not, without more, adversely affect the welfare of the child so as to warrant uprooting permanent custody from such surroundings, then obviously an occasional visit should be less likely to threaten that same welfare.
Other jurisdictions have been similarly confronted and we note a recent decision from Illinois holding a trial judge to have abused his discretion by imposing his own moral code as the sole reason for custody disqualification. Jarrett v. Jarrett, (1978) 64 Ill. App.3d 932, 21 Ill.Dec. 718, 382 N.E.2d 12. Our examination of contemporary decisions from all over the country convinces us that in order for such a live-in arrangement to be by itself unacceptable it must "... be demonstrated to have an adverse impact upon the child... ." In re Burrell, 58 Ohio St.2d 37, 388 N.E.2d 738, 739 (1979).[4]
We here stop short of holding the judge's ruling to be an abuse of his discretion, but in accord with the overwhelming majority of recent case law, we relinquish this cause for a further hearing on the question of whether the live-in arrangement in and of itself has an impact on this child's welfare as distinct from it simply failing to satisfy the moral code of the trial judge. At that same hearing, all other factors should be considered. We note the father's live-in companion has a young child of her own and that too might be considered as a plus for the suitability of the environment. We would reiterate that a live-in arrangement such as is before us, continues as a negative factor for the trial judge to consider and hold only that it is insufficient in and of itself.
Finally, though not necessary to this conclusion, the record reflects that as of March 1978, the father was contemplating marriage to this same girlfriend, but that a final decision had not been reached because each had already failed in marriage and both needed more time to crystallize their relationship. Presumably that process is complete by now and should be looked into.
We hope this further hearing can be accomplished without the parents engaging in a tug of war with the child's loyalties and emotions.
JURISDICTION RELINQUISHED FOR SIXTY DAYS IN ACCORDANCE HEREWITH.
CROSS, J., and DOWNEY, JAMES C., Associate Judge, concur.
NOTES
[1] As an example we refer to the removal of a child from his or her wedded parents and placement in a foster home.
[2] Note however there is no suggestion in the case before us that the mother's custodial care of her child is anything other than perfect.
[3] Also at stake is a month in the summer.
[4] See also Commonwealth v. Steiner, 257 Pa. Super. 457, 390 A.2d 1326 (1978); Bonjour v. Bonjour, 566 P.2d 667 (Alaska 1977); Greer v. Greer, 346 So.2d 846 (La. App. 1st Cir.1977); DiStefano v. DiStefano, 60 A.D.2d 976, 401 N.Y.S.2d 636 (Sup.Ct. 1978); and Brown v. Brown, 237 S.E.2d 89 (Va. 1977); Burris v. Burris, 70 Ill. App.3d 503, 26 Ill.Dec. 810, 388 N.E.2d 811 (3rd Dist. 1978); Wadlington, Sexual Relations after Separation or Divorce: The New Morality and the Old and New Divorce Laws, 63 Va.L.Rev. 249 (1977).