*In re* MARRIAGE OF LINDA KAYE COMBS, Petitioner-Appellee and Cross-Appellant, and JACK DEVERE COMBS, Respondent-Appellant and Cross-Appellee.

Fifth District   No. 78-545

Opinion filed November 21, 1979.

534

Meyer & Meyer, of Greenville, for appellant.

Steven N. Mottaz, of Alton, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Respondent Jack Combs appeals and petitioner Linda Combs cross-appeals from the judgment of the Circuit Court of Fayette County awarding custody of the parties' minor daughter to respondent and dividing marital property pursuant to the dissolution of the parties' marriage. The order of dissolution, entered on May 17, 1978, is not contested.

A hearing was held on June 7, 1978, to decide the issues of custody of the minor child and the property distribution. At this hearing, it was established that Linda Combs and her minor daughter, Jaye Anne, had been living in a four-bedroom house with Vernon Gans, a married man, for the past five months. Jaye Ann's two older emancipated siblings lived with respondent in the marital home. Jaye Ann, age 12 at the time of the hearing, testified that she had her own bedroom and knew that her mother shared a bed in one of the other bedrooms with Gans. When Jaye Ann was asked whether she had a preference concerning her custody, respondent's objection was sustained thereby precluding a response to this question.

Linda testified that she had moved twice with Jaye Ann since leaving respondent. Jaye Ann had transferred schools on two occasions but her grades have remained substantially stable.

After hearing the evidence, the court ordered that custody of Jaye Ann be transferred immediately to her father, stating its reasons as follows:

"THE COURT: The whole point of this matter is this marriage certainly was contributed, this marriage, this adultery * * *. Let me put it like this, adultery has contributed to the breaking up of

this marriage, probably will contribute to the breaking up of another marriage. In any event it's illegal, open and notorious adultery, and maybe the child knows right from wrong. If she does follow the example of the mother, breaking down the feelings of committing adultery * * *. That's not what I say, but what I do suspect is perhaps mothers do have more of a capatability [*sic*] with daughters at that age. On the other hand, it's probably at this time that the girl needs some special guidance as she comes to an age when sex is a natural change in their lives. And I don't think this is the type of example she needs. It's illegal, it's wrong and she forfeited her right to be there to influence that child in the most important ways as far as this Court is concerned under the present circumstances. She chose to take this course of conduct * * *. Under all the circumstances in here, I can't go along with that. I place the custody of this child with the father."

The court then divided the marital property between the parties. As part of the distribution, the court ordered the parties to dispose of the marital home by one of three methods: it could be sold immediately and the proceeds divided equally after payment of the mortgage debt and expenses; or within 60 days respondent could purchase petitioner's one-half interest in the home, less debts and expenses, after the home was valued by three independent appraisers; or, respondent could continue living in the home until Jaye Ann reached the age of 18 if he paid petitioner $110 monthly as rent, paid the mortgage debt, taxes and expenses, and upon sale of the house paid petitioner one-half of the net proceeds.

On appeal, petitioner contends that the trial court erred in awarding custody of the minor child to respondent because its determination was based solely on petitioner's sexual conduct and not on the best interests of the child. Under section 602(a) of the Illinois Marriage and Dissolution of Marriage Act, the best interest of the child is of paramount importance in determining custody. Factors to be considered include the wishes of the parents, the preference of the child, his interaction with his parents and siblings and the child's adjustment to home, school and community. (Ill. Rev. Stat. 1977, ch. 40, par. 602(a).) In aid of its determination, the court may appoint an attorney to represent the child's interests in custody and visitation matters (Ill. Rev. Stat. 1977, ch. 40, par. 506); order an investigation and report concerning custodial arrangements (Ill. Rev. Stat. 1977, ch. 40, par. 605); and interview the child in chambers in the presence of counsel (Ill. Rev. Stat. 1977, ch. 40, par. 604). If competent as a witness in other respects, the child may testify to his custodial preferences. *Crownover v. Crownover* (1975), 33 Ill. App. 3d 327, 337 N.E.2d 56; *Patton v. Armstrong* (1974), 16 Ill. App. 3d 881, 307 N.E.2d 178.

By virtue of post-trial motions, timely filed within 30 days of the court's order awarding custody, arguments upon those motions, and the order of court ruling upon the post-trial motions, it appears that subsequent to the court's order of dissolution of the marriage Linda Combs married Vernon Gans. This information was thus before the court at the time its final order regarding custody of Jaye Ann was entered. As it appears from the record and the court's remarks that the adulterous relationship of Linda Combs and Gans was practically the only factor considered in making the award of custody, and that that adulterous relationship has terminated, we feel that a more meaningful inquiry must be made into the best interests of the minor child with regard to placement of her custody.

■■ ■ Authorities differ on the question of whether a parent who is presently living in an illicit relationship with another is, by reason of such relationship, an unfit parent. (Compare *De Franco v. De Franco* (1978), 67 Ill. App. 3d 760, 384 N.E.2d 997, and *Gehn v. Gehn* (1977), 51 Ill. App. 3d 946, 367 N.E.2d 508, with *Burris v. Burris* (1979), 70 Ill. App. 3d 503, 388 N.E.2d 811, and *Jarrett v. Jarrett* (1978), 64 Ill. App. 3d 932, 382 N.E.2d 12.) However, it is generally recognized and held that past immoral conduct which has been terminated will not render a parent unfit unless it can be shown that a child would be adversely affected by such conduct. (See *Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647; and *Hendrickson v. Hendrickson* (1977), 49 Ill. App. 3d 160, 364 N.E.2d 566.) In view of this state of the law we believe the interests of the minor child, Jaye Ann, would be best served by remanding the case regarding custody for further evidence and consideration of the court.

In reaching a custody determination, the court may not consider the conduct of the proposed custodial parent which does not affect the parent-child relationship. (Ill. Rev. Stat. 1977, ch. 40, par. 602(b).) We realize that the instant situation presents difficult questions involving the separation of Jaye Ann from her brother and sister, the location of her childhood home, the number of times Jaye Ann has transferred between schools, and the bonds toward her felt by both parents. Our decision does not intimate a preference for a particular custodian, but merely directs the trial court to conduct a meaningful inquiry into Jaye Ann's best interests, observing statutory standards and utilizing statutory procedures and giving consideration to the fact that Linda Combs has since the original judgment married Vernon Gans. We regard section 506 authorizing the appointment of separate counsel for a child in custody matters as a salutory provision especially appropriate in the instant case. (Ill. Rev. Stat. 1977, ch. 40, par. 506.) Accordingly, we reverse that portion

of the court's order placing Jaye Ann's custody with respondent and remand the cause for further hearing.

With respect to the division of marital property, respondent contends that the trial court did not divide it in "just proportions" as required by statute. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Petitioner, who initially argued in her brief that she was entitled to a larger portion of the property admitted at oral argument that the distribution was equitable. Our review of the record persuades us that the trial court did not abuse its discretion in dividing the marital property. Although the division of this property was not equal, as petitioner received a larger share, we cannot say that it was inequitable (*Shubert v. Shubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266), inasmuch as respondent has the continued use of the family's small farming operations (see Ill. Rev. Stat. 1977, ch. 40, par. 503(c)).

On remand, the court may reconsider its disposition of the marital residence depending on the outcome of its custody determination; however, the disposition would not seem inappropriate inasmuch as the home is presently serving as the residence for the parties' children. Petitioner and Gans have since married and live in his home. If such a modification is made, the trial court may readjust the division of the marital property to insure an equitable distribution.

■ One part of the disposition of the marital home was in error, however. The third option concerning disposition of the home required respondent to pay $110 monthly as "rent" to petitioner. This award is a form of maintenance which the court explicitly denied, and hence is inconsistent and cannot be allowed. Upon remarriage or cohabitation, the right to maintenance terminates (Ill. Rev. Stat. 1977, ch. 40, par. 510(b)). Accordingly, we believe that the portion of the court's order directing Jack to pay rent to Linda was in error, and we reverse that part of the settlement order.

The judgment of the Circuit Court of Fayette County is reversed in part and remanded for further proceeding in accordance with this opinion.

Reversed in part; remanded.

JONES, P. J., and HARRISON, J., concur.